# United States Court of Appeals for the Federal Circuit

2006-3181


JAMES A. LOWDER,

                                         Petitioner,

v.


DEPARTMENT OF HOMELAND SECURITY,

                                         Respondent.


Kevin P. Anderson, Wiley Rein & Fielding LLP, of Washington, DC, argued for petitioner.

Kenneth S. Kessler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Peter D. Keisler, Acting Attorney General and Steven J. Gillingham, Assistant Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2006-3181

JAMES A. LOWDER,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

_____

DECIDED:  October 16, 2007

_____

Before RADER, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and MOORE, <u>Circuit Judge</u>.

FRIEDMAN, <u>Senior Circuit Judge</u>.

The question is whether the appellant James A. Lowder's service with the United States Secret Service Uniformed Division ("Uniformed Division") qualifies as "law enforcement officer" service.  If so, he would be entitled to the higher retirement benefits that such officers receive.  The Merit Systems Protection Board ("Board") determined, however, that Mr. Lowder's service did not so qualify, and we affirm.

I

A.  Federal "law enforcement officers" may receive more favorable retirement benefits than most federal employees.  They may retire earlier, at age 50, after 25 years of such service, rather than at age 55 and after 30 years of service.  They also receive a higher annuity.  In return for these benefits, they are required to contribute a slightly

higher portion of their pay toward those benefits. 5 U.S.C. §§ 8334(c), 8336(a), 8336(c)(1), 8412(a), 8412(d), 8422(a)(2) (2000).

"Law enforcement officer" positions may be either "primary" or "secondary." 5 C.F.R. §§ 831.902, 842.802. Primary positions are those where the employee directly performs law enforcement officer duties. Id. Secondary positions are generally supervisory or administrative law enforcement positions. Id. To qualify for law enforcement officer retirement, an employee must have a specified period of primary service. He may combine that service with secondary service to attain law enforcement officer status by transferring directly from a primary to a secondary service position. 5 C.F.R. §§ 831.904(a), 842.803(b).

B. Mr. Lowder worked in the Uniformed Division from 1970 until September 1978, when he voluntarily transferred to the Federal Law Enforcement Training Center ("Training Center"). While at the Division, he was assigned to both the White House and the Foreign Mission Division. At the White House, his regular duties involved protecting the President of the United States, his family and the White House grounds. At the Foreign Mission Division, he patrolled areas of Washington, DC, functioning, in essence, as a regular Washington, DC police officer. Members of the Uniformed Division are authorized to make arrests and are required to carry a firearm. The maximum entry age for the Division was 28, and retirement was mandatory at age 59. Employees of the Division were required to have an annual physical examination.

At the time of Lowder's service with the Uniformed Division, the Division members' retirement benefits were provided under the District of Columbia Police and Firefighters' Retirement System ("District of Columbia System"). That system had

superior benefits to the Civil Service Retirement System. When Lowder transferred to the Training Center in 1978, however, he became subject to the Civil Service Retirement System ("Civil Service System") and received retroactive service credit under that system for his service with the Uniformed Division.

C. The government recognizes that Lowder's work at the Training Center constituted secondary law enforcement officer service. Whether Lowder qualifies for law enforcement officer retirement benefits thus depends on whether his Uniformed Division service was primary law enforcement officer service.

In 2004, the Treasury Department (of which the Secret Service was a part), overruling a prior determination, ruled that Lowder's service with the Uniformed Division did not constitute "law enforcement officer" service and that he, therefore, did not qualify for law enforcement officer retirement benefits.

Lowder appealed that ruling to the Board, which affirmed. In his initial decision, which became final when the Board denied review of it, the Board's administrative judge found that Lowder's "duties as an officer with the [Uniformed Division] largely involved the protection of life and property, with particular focus on the president and his family, and included patrolling, enforcing traffic laws, acting as a first responder with regard to public disturbances or other incidents, and conducting preliminary investigations." The administrative judge held that Lowder's service in the Uniformed Division "was not in a position which existed for the purpose of investigating, apprehending, or detaining individuals suspected or convicted of violating the criminal laws of the United States" and, therefore, did not constitute law enforcement officer service.

II

A. The governing statute defines a "law enforcement officer" as "an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States . . . ." 5 U.S.C. §§ 8331(20), 8401(17). An OPM implementing regulation states that "law enforcement officer" "does not include an employee whose primary duties involve maintaining order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than those who are suspected or convicted of offenses against the criminal laws of the United States." 5 C.F.R. § 831.902. Under the Federal Employees' Retirement System, one of two federal retirement systems (the other being the Civil Service Retirement System, see Part III, below), to qualify as a "law enforcement officer" the duties of the position must be "sufficiently rigorous that employment opportunities are required to be limited to young and physically vigorous individuals." 5 U.S.C. § 8401(17).

In determining whether a particular employee is a "law enforcement officer," we use a "position-oriented approach" that emphasizes "the official documentation of the position" in evaluating whether "the 'basic reasons for the existence of the position' was the investigation, apprehension, or detention of criminals or suspects." Watson v. Dep't of the Navy, 262 F.3d 1292, 1304 (Fed. Cir. 2001) (citations omitted). Thus, "a federal police officer seeking [law enforcement officer] credit must prove that he or she occupied a position that primarily required the investigation, apprehension, or detention of criminals or suspects, rather than merely the protection of life or property . . . ." Id.

Under these standards, we have no basis for rejecting the Board's conclusion that, while employed in the Uniformed Division, Lowder was not a "law enforcement

officer." The Board determined that Lowder's duties there "largely involved the protection of life and property, with particular focus on the president and his family, and included patrolling, enforcing traffic laws, acting as a first responder with regard to public disturbances or other incidents, and conducting preliminary investigations." Based on this finding, the Board justifiably concluded that Lowder's service was not in a "position which existed for the purpose of investigating, apprehending, or detaining individuals suspected or convicted of violating the criminal laws of the United States."

The record supports those findings. Lowder testified that when assigned to the White House his "primary duty was protecting the President of the United States, his family, and the grounds," and that when he was assigned to the Foreign Missions Division, his "primary duty was walking on foot patrol or driving a scout car and enforcing laws in Washington, DC." These are not the duties that, under the statutory definition, the OPM regulations and our decisions, qualify an employee for "law enforcement officer" status.

The classification of Lowder's position with the Uniformed Division further supports the Board's decision. During the time he so served, his position was classified under the federal government's general classification system in the 083 Police Series. OPM's classification guide describes the "primary duties" of those positions as "the performance or supervision of law enforcement work in the preservation of peace; the prevention, detection, and investigation of crimes; the arrest or apprehension of violators; and the provision of assistance to citizens in emergency situations, including the protection of civil rights." Grade Evaluation Guide for Police and Security Guard Positions in Series, GS-0083/GS-0085 at 2, April 1988. The Guide further explains that

"[t]he primary mission of police officers in the Federal service is to maintain law and order. In carrying out this mission, police officers protect life, property, and the civil rights of individuals." Id.

In Watson, we stated that "the official documentation of the GS-083 series indicates that all officers in that series in all departments of the federal government are presumptively not entitled to [law enforcement officer] credit. Thus, officers in that series would only be eligible for such credit if they could persuade the agency or Board that 'contrary to the official documentation of the position,' the duties actually performed by the officers on a regular and recurring basis clearly indicate that the 'basic reasons for the existence of the position' was the investigation, apprehension, or detention of criminal suspects." 262 F.3d at 1304 (citations omitted). Lowder has not so shown.

As the Board stated, the "classic police functions" as described in the Classification Guide, "dedicated to 'maintaining order, protecting life and property, and guarding against or inspecting for violations of law, while unquestionably critical to the functioning of civil society itself, and involving both the exercise of sensitive judgment, and potential exposure to diverse personal hazards, are nonetheless specifically excluded from the legal definition of [law enforcement officer] under the CSRS regulations."

B.     Lowder contends, however, that the Board decision was fatally defective because the Board's opinion did not explicitly discuss several of his contentions. He infers that, in the absence of such discussion, the Board must be deemed not to have considered them.

2006-3181                                  6

The failure to discuss particular contentions in a case, however, does not mean that the tribunal did not consider them in reaching its decision. See Hartman v. DVA, 483 F.3d 1311, 1315 (Fed. Cir. 2007) ("'That the court did not specifically mention the [argument] in its opinion forms no basis for an assumption that it did not consider [it] . . . .'"). See, also Charles G. Williams Const., Inc. v. White, 326 F.3d, 1376, 1380 (Fed. Cir. 2003) (stating "[t]he Board's failure to discuss the evidence upon which Williams relies does not mean that it did not consider it"); Carolina Tobacco Co. v. Bureau of Customs and Border Prot., 402 F.3d 1345, 1350 (Fed. Cir. 2005) (stating "a district court's failure to discuss an issue does not necessarily establish that the court did not consider it"). All that it means is that the author of the opinion, for whatever reasons, did not deem it necessary or appropriate specifically to discuss those points. The author of an opinion has broad discretion to determine what the opinion should contain and in what detail. As we recently stated, a "'litigant's right to have all issues fully considered and ruled on by the appellate court does not equate to a right to a full written opinion on every issue raised.'" Bernklau v. Principi, 291 F.3d 795, 801 (Fed. Cir. 2002) (quoting United States v. Garza, 165 F.3d 312, 314 (5th Cir. 1999)). "While it may be desirable in some cases to afford each issue a complete written discussion, no statute or rule compels such an approach . . . ." Id. (citation omitted).

In this case the administrative judge wrote a detailed opinion that convincingly explained why Lowder's service with the Uniformed Division was not as a "law enforcement officer." No more detailed discussion was required.

C.  Lowder argues that the administrative judge improperly excluded the testimony of three witnesses that he wanted to present. One of the witnesses, a

supervisor at the Training Center, was expected to testify that he hired only people with prior law enforcement officer experience and that he considered former officers of the Uniformed Division as such people. The other two witnesses were expected to testify about the legal issues in the case.

Although Lowder himself testified at length and submitted documentary evidence, the administrative judge declined to hear those three witnesses because their testimony would have been "cumulative or insufficiently probative." The decision whether to admit particular evidence is within the discretion of the administrative judge. Davis v. Office of Pers. Mgmt., 918 F.2d 944, 946 (Fed. Cir. 1990). One of the three witnesses' testimony related to a peripheral matter of minor relevance. The other two witnesses' testimony involved opinions on legal issues that were of dubious relevance. The administrative judge did not abuse his discretion in refusing to permit those three witnesses to testify.

III

Lowder contends, however, that his claim to "law enforcement officer" status should have been determined not under the Civil Service Retirement System (as the Board and this court have done), but under the later-enacted Federal Employees' Retirement System. He argues that under the latter system, he should have prevailed.

The Federal Employees' Retirement System, created by a statute in 1986, provides a parallel alternative retirement system for federal employees. See, e.g., King v. Merit Sys. Prot. Bd., 105 F.3d 635, 636 (Fed. Cir. 1997). The new system's definition of "law enforcement officer" was substantially identical to that of the Civil Service Retirement System. In a 1988 amendment, however, the definition was amended to add the following to the definition of that term:

    (B) an employee of the Department of the Interior or the Department of the Treasury (excluding any employee under subparagraph (A)) who occupies a position that, but for the enactment of the Federal Employees' Retirement System Act of 1986, would be subject to the District of Columbia Police and Firefighters' Retirement System, as determined by the Secretary of the Interior or the Secretary of the Treasury, as appropriate.

Act of Jan. 8, 1988, Pub. L. 100-238, § 103(c), 101 Stat. 1744. Lowder argues that this amended definition covers his service with the Uniformed Division.

  This contention has two fatal flaws.

  First, Lowder seeks to apply the amended definition of "law enforcement officer" enacted in 1988 to service he performed from 1970 to 1978. Federal statutes will not be given retroactive effect, however, unless Congress clearly indicates its intention to do so. See Bernklau, 291 F.3d 795 at 804 (stating "the Supreme Court has also held repeatedly that federal legislation is to be construed to avoid retroactivity unless we can discern clear congressional intent for that result"). Congress has not indicated any intent to make the new definition retroactive.

  Second, the new definition would not help Lowder. It adds to the definition of "law enforcement officer" "an employee . . . who occupies a position that, but for the enactment of the Federal Employees' Retirement System Act of 1986, would be subject to the District of Columbia Police and Firefighters' Retirement System." In other words, it covers employees who lost their coverage under the DC Police and Firefighters' Retirement System as a result of the enactment of the 1986 Act.

  Lowder, however, lost his coverage under the DC retirement system not because of the 1986 Act, but because in 1978 he voluntarily transferred from his position in the Uniformed Division (which the DC system covered) to the Training Center, whose

2006-3181        9

employees were covered by the Civil Service Retirement Act. The 1988 expanded definition of "law enforcement officer" simply does not cover Lowder.

CONCLUSION

The decision of the Board that Lowder's service with the Uniformed Division was not "law enforcement officer" service is

<u>AFFIRMED</u>.