**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LARRY BACA,

     Petitioner,

v.

DEPARTMENT OF THE ARMY,

     Respondent.

--------------------------------------

MERIT SYSTEMS PROTECTION
BOARD,

     Intervenor.

No. 19-9536
(MSPB No. DE-0752-19-0022-I-1)
(Merits Systems Protection Board)

_____

**ORDER**
_____

Before **BACHARACH**, **SEYMOUR**, and **McHUGH**, Circuit Judges.
_____

This matter is before us on Petitioner's *Petition for Rehearing En Banc or Panel Rehearing*. Petitioner's request for panel rehearing is granted in part to the extent of the modifications in the attached revised opinion. The court's September 2, 2020 opinion is withdrawn and replaced by the attached revised opinion, which shall be filed as of today's date. Because the panel's decision to partially grant rehearing resulted in only

non-substantive changes to the opinion that do not affect the outcome of this appeal, Petitioner may not file a second or successive rehearing petition. *See* 10th Cir. R. 40.3.

The rehearing petition and the attached revised opinion were transmitted to all non-recused judges of the court who are in regular active service. As no judge requested that the court be polled, the request for rehearing en banc is denied. *See* Fed. R. App. P. 35(f).

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LARRY BACA,

      Petitioner,

v.

DEPARTMENT OF THE ARMY,

      Respondent.

----------------------------------------

MERIT SYSTEMS PROTECTION
BOARD,

      Intervenor.

No. 19-9536

**PETITION FOR REVIEW FROM AN ORDER OF THE MERIT SYSTEMS
PROTECTION BOARD**

**(No. DE-0752-19-0022-I-1)**

Andrew B. Indahl, Altura Law Firm, Albuquerque, New Mexico for Petitioner.

Domenique Kirchner, Senior Trial Counsel, Commercial Litigation Branch, Civil
Division, Department of Justice (Joseph H. Hunt, Assistant Attorney General; Robert E.
Kirschman, Jr., Director, United States Department of Justice, Civil Division, National
Courts Section; Elizabeth M. Hosford, Assistant Director, United States Department of
Justice, Civil Division, National Courts Section, with her on the brief), Washington, D.C.,
for Respondent.

Tristan L. Leavitt, General Counsel; Katherine M. Smith, Deputy General Counsel; Stephen Fung, Attorney, Office of the General Counsel, Merit Systems Protection Board, Washington, D.C, for Intervenor.

_____

Before **BACHARACH, SEYMOUR,** and **MCHUGH,** Circuit Judges.

_____

**SEYMOUR**, Circuit Judge.

_____

On September 18, 2018, Mr. Larry Baca was removed from his position in the Directorate of Public Works at the U.S. Army White Sands Missile Range, New Mexico. Mr. Baca sought review of this decision by the Merit Systems Protection Board (MSPB), asserting three affirmative defenses to his removal. The MSPB rejected all of Mr. Baca's defenses and affirmed his removal. He appeals only the MSPB's determination with respect to one of his affirmative defenses, that his firing was unlawful retaliation for whistleblowing in violation of the Whistleblower Protection Act (WPA), 5 U.S.C. § 2302(b). We hold that we have jurisdiction over this issue, and we affirm.

## I.

### Background

In October 2017, Mr. Baca was hired by the U.S. Army White Sands Missile Range in New Mexico as a Supervisory Engineer, GS-13, and Chief of the Operations and Maintenance Division in the Directorate of Public Works. In July 2018, Mr. Baca received a notice of proposed removal that charged him with: (1) conduct unbecoming a federal employee; (2) interfering with an agency investigation; (3) abusive, offensive,

2

disgraceful or inflammatory language; and (4) lack of candor. Mr. Baca submitted a written response to his notice of removal stating that every charge was a "False Utterance." Admin. R., vol. I at 185–89. Mr. Baca was removed from his position on September 18, 2018.

He appealed his removal to the Merit Systems Protection Board (MSPB). An administrative judge (AJ) adjudicated the appeal in an initial decision and determined that two of the charges were established and warranted removal. Admin. R., vol. II at 694, 723, 736. That decision became the final decision of the MSPB after neither party petitioned for further review.[1] We review the details of each of the charges in order to provide context and then we turn to Mr. Baca's affirmative defenses.

A.      *Charge 1: Conduct Unbecoming a Federal Employee*

The AJ sustained the charge of conduct unbecoming a federal employee based on several specifications of misbehavior by Mr. Baca. First, Mr. Baca was accused by five colleagues of showing them pornography at work. The AJ determined that Mr. Baca had shown colleagues pornography on his cellphone on multiple occasions and had threatened two colleagues with repercussions if they told anyone about the pornography he showed them.

---

[1] A decision becomes final 35 days after issuance if neither the employee nor agency petitions for review by the full three-member board in Washington, D.C. 5 C.F.R. §§ 1201.111, 1201.113–14.

In addition, at least two of Mr. Baca's female colleagues reported that he had made unwanted romantic advances and inappropriate comments toward them. In one instance, Mr. Baca told Robin Pritchett he liked her and asked her to go dancing with him, continuing his advances despite her repeated refusals. Based upon his conduct, Ms. Pritchett filed an EEO sexual harassment complaint against Mr. Baca in March 2018. In May 2018, Mr. Baca filed an EEO sexual harassment complaint accusing Ms. Pritchett of making unwanted romantic advances toward him. In his written response to the removal charges and at his hearing before the MSPB, however, Mr. Baca did not mention his EEO complaint against Ms. Pritchett but instead simply denied Ms. Pritchett's accusations.

After an evidentiary hearing, the AJ found that Mr. Baca had made unwelcome romantic advances toward two female colleagues and that his denials were not credible. Regarding the incident with Ms. Pritchett, the AJ noted it was "inherently improbable that, if there were any truth to [Mr. Baca's] accusation that Pritchett was the one sexually harassing him, [he] did not raise that claim either in his written response to the proposal to remove him or at the Board's hearing." *Id.* at 706. Based upon these findings and others, the AJ sustained charge one for conduct unbecoming a federal employee.

B.     *Charge 2: Interfering with an agency investigation*

The charge of interfering with an agency investigation was based upon a single specification that on March 8, 2018, Mr. Baca attempted to intimidate his colleague, Bill Huls, in order to secure a written statement that Ms. Pritchett battered another coworker, Gus Alvidrez. Another Army employee, Cecilia Montoya, testified that she overheard Mr.

4

Baca pressuring Mr. Huls for almost three hours to write a statement. Notably, she had written a contemporaneous email to Ms. Pritchett describing what she overheard. The AJ credited Ms. Montoya's testimony and found that Mr. Baca had tried to intimidate Mr. Huls into providing information on behalf of Mr. Alvidrez. But the AJ did not sustain this charge because there was insufficient evidence that the attempt to intimidate Mr. Huls interfered with a government investigation.

C.      *Charge 3: Abusive, Offensive, Disgraceful or Inflammatory Language*

Mr. Baca was charged with using abusive, offensive, disgraceful or inflammatory language during several incidences in which he used derogatory terms to refer to his colleagues. Based upon the testimony of his coworkers, the AJ found that four of the five specifications were established, including several incidences of Mr. Baca using derogatory Spanish terms to refer to his colleagues.

D.      *Charge 4: Lack of Candor*

The agency charged Mr. Baca with lack of candor based upon his statement to an investigator that his "daily interaction with Robin Pritchett and other subordinates [was] always extremely professional." Admin. R., vol. I at 15. The charge asserted that Mr. Baca misstated his interaction with Ms. Pritchett because he "had in fact previously sexually harassed Ms. Pritchett, spoken unprofessionally towards other women . . . and created a hostile work environment." *Id.* The AJ found that the charge was not established because the question posed to Mr. Baca about his relationship with Ms.

5

Pritchett was "extremely generalized." Admin. R., vol. II at 723. The AJ reasoned that the charge was "akin to a criminal prosecutor hearing a defendant state under oath that he is 'innocent,' and adding a perjury charge." *Id.*

### E.      *Affirmative Defenses*

In addition to denying the charges against him, Mr. Baca raised several affirmative defenses. He originally asserted that his removal was retaliation for his refusal to follow two unlawful orders by his superior to sign off on an expensive janitorial contract.  Mr. Baca subsequently amended his affirmative defenses, claiming that his removal was reprisal for (1) a whistleblower disclosure against Ms. Pritchett; (2) two whistleblower disclosures of "gross mismanagement" related to a janitorial contract; and (3) an EEO discrimination complaint. Aple. App, vol. I at 445–49. The AJ concluded that Mr. Baca failed to establish any of his affirmative defenses. The MSPB's decision became final on April 4, 2019, after neither party petitioned for administrative review.

Mr. Baca appeals only the Board's decision with respect to one affirmative defense: that his removal was a reprisal for whistleblowing against Ms. Pritchett. The facts relevant to this defense pertain to a meeting that took place on March 7, 2018. All parties agreed that Ms. Pritchett, Mr. Huls, and Mr. Baca were together in Ms. Pritchett's office for a meeting when Mr. Alvidrez entered Ms. Pritchett's office. She became angry, asked Mr. Alvidrez to leave, and the door slammed shut behind him. Mr. Baca claimed that he heard the doorknob strike Mr. Alvidrez in the back, that he immediately told Ms. Pritchett she had hit Mr. Alvidrez with the door, that Mr. Huls agreed with him, and that Mr. Baca

6

then ended the meeting. The Army denied that Mr. Baca witnessed the doorknob hitting Mr. Alvidrez and also denied Mr. Baca's assertion that he stopped the meeting after accusing Ms. Pritchett of striking Mr. Alvidrez.

The following day, Mr. Baca asked Mr. Huls to provide a written statement about what he had observed during the meeting. The Army asserted that Mr. Baca was attempting to intimidate and pressure Mr. Huls into providing a statement to support Mr. Baca's version of the meeting. Mr. Huls refused Mr. Baca's request to provide a statement on March 8th but did provide one on March 16th at the request of his supervisor. With respect to Ms. Pritchett shutting the door when Mr. Alvidrez left the meeting, Mr. Huls' statement said:

> Ms. Pritchett was right there by the door when Mr. Alvidrez turned around to leave. Ms. Pritchett did grab the door and shut it. It might have slammed shut but that door had a broken door closure and it wouldn't take much for it to sound like it was slammed shut, so I can't really confirm that it was slammed.

*Id.* at 239. An AR 15-6 investigation was conducted into the alleged assault and it concluded that Ms. Pritchett had not struck Mr. Alvidrez with the doorknob.

## II.
## Jurisdiction

We must address two jurisdictional questions of first impression that are presented in this case: (1) whether this court has jurisdiction to review a whistleblower retaliation claim brought before the MSPB as an affirmative defense to an employment action, and (2) whether we have jurisdiction over a case raising both discrimination and whistleblower

retaliation defenses before the MSPB where the discrimination claim has been waived on appeal.[2] Both questions are straightforward and easily resolved.

The Court of Appeals for the Federal Circuit generally has jurisdiction over final decisions by the MSPB, 5 U.S.C. § 7703(b)(1)(A), with two exceptions. First, an appeal that also challenges an adverse employment action based upon a claim of prohibited discrimination (termed a "mixed case") must be appealed to the appropriate federal district court. *See Perry v. MSPB*, 137 S. Ct. 1975, 1988 (2017)).[3] Second, a petition for judicial review of:

> [A] final order or final decision of the [MSPB] that raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in [5 U.S.C.] section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C) or (D) shall be filed in the United States Court of Appeals for the Federal Circuit or *any court of appeals of competent jurisdiction*.

5 U.S.C. § 7703(b)(1)(B) (emphasis added).[4]

---

[2] The MSPB joined as an intervenor and provided separate briefing in support of this court's jurisdiction to review the case.

[3] A "mixed case" or "mixed claim" raises "a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination." *Perry*, 137 S. Ct. at 1981 (quoting *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012)); *see also* 29 C.F.R. § 1614.302(a)(2).

[4] Previously, petitions for review of final decisions by the MSPB were exclusively reviewed by the Federal Circuit. *See Avilés v. MSPB*, 799 F.3d 457, 459 (5th Cir. 2015). The WPEA extended judicial review of final MSPB in whistleblower cases. *See* Pub. L. No. 112-199, 126 Stat. 1469 *codified at* 5. U.S.C. § 7703(b)(1)(B). Initially set to sunset after two years and then extended another three years, *see* Pub. L. No. 113-170, the jurisdictional expansion was permanently authorized in 2018 by the All Circuit Review Act. Pub. L. No. 115-195, 132 Stat. 1510 (2018).

*A.*	*Retaliation Claim as Affirmative Defense*

There are two ways whistleblower retaliation claims arise before the MSPB: (1) a stand-alone claim under 5 U.S.C. § 1221 as an individual right of action; or (2) as an affirmative defense to an adverse employment action over which the MSPB has jurisdiction under 5 U.S.C. § 7513. In *Mottas v. Dep't of Army*, 720 Fed. App'x 912, 913 (10th Cir. 2017), we exercised jurisdiction to review an MSPB decision on a direct individual whistleblower action filed under 5 U.S.C. § 1221.[5] But we have not had occasion to exercise jurisdiction over an appeal from a final decision of the MSPB which includes a whistleblower claim raised as an affirmative defense. Notably, however, the WPEA's grant of jurisdiction under 5 U.S.C. § 7703(b)(1)(B) does not differentiate between whistleblower actions raised as direct claims and those raised as affirmative defenses but simply refers to "a petition for review." *See* 5 U.S.C. § 7703(b)(1)(B), *supra* at 8–9. Under the plain language of that statute, therefore, we have jurisdiction over appeals from final MSPB decisions on whistleblower claims where the claims arise either directly or as affirmative defenses.

*B.*	*Waiver of Employment Discrimination Claim*

As we have noted, Mr. Baca originally challenged his removal as retaliation for

---

[5] For jurisdiction, we relied in *Mottas* on the 2012 version of the WPEA. *See* 720 F. App'x at 912 n.1. The language of that statute is equivalent to the current language of § 7703(b)(1)(B), which permanently grants jurisdiction to "any court of appeals of competent jurisdiction." *See* Pub. L. No. 115-195, 132 Stat. 1510 (2018).

9

three whistleblower disclosures and for his filing of an EEO discrimination complaint, making his claim a "mixed case." Aple. App, vol. I at 445–49. The Code of Federal Regulations explains that an aggrieved employee "may obtain judicial review as provided by 5 U.S.C. § 7703" where the employee "elects to waive the discrimination issue" on appeal. 5 C.F.R. §§ 1201.120 & 1201.157. Because Mr. Baca filed an explicit waiver of his discrimination claim and only appeals the denial of one of his other affirmative defenses, we have jurisdiction under § 7703 to review this case.

## III.

## Discussion

We must affirm the decision of the MSPB unless it is (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The board abuses its discretion when it rests its decision on factual findings unsupported by substantial evidence." *Kirkendall v. Dep't of Army*, 573 F.3d 1318, 1321 (Fed. Cir. 2009).

Mr. Baca claims that his removal was in retaliation for his protected disclosure to his supervisor, Jose Gallegos, that he witnessed Ms. Pritchett slam her office door into Mr. Alvidrez's back and injure him. An agency may not remove an employee for whistleblowing, 5 U.S.C. § 2302(b)(8), which is a protected disclosure by a government employee who "reasonably believes that the disclosure evidences any violation of any

10

law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 C.F.R. § 1209.4(b). When asserting a whistleblower reprisal claim, the employee bears the prima facie burden of establishing that he made a protected disclosure and that it "was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1); *see also Marano v. Dep't of Justice*, 2 F.3d 1137, 1140 (Fed. Cir. 1993) (explaining that the WPA requires "evidence only that [a whistleblower's] protected disclosure played a role in, or was 'a contributing factor' to, the personnel action taken").

The final decision of the MSPB denied Mr. Baca's whistleblower reprisal claim based upon its finding that he did not reasonably believe his disclosure evidenced a violation. Mr. Baca challenges the Board's ruling as arbitrary, capricious, and contrary to law, claiming that it ignored his primary theory of relief, applied the wrong legal standard, and ignored evidence that supported his reasonable belief that Ms. Pritchett battered Mr. Alvidrez.

A.      *Lawful Assistance Under 5 U.S.C. § 2302(b)(9)(B)*

Mr. Baca first contends the AJ "completely ignored" his primary theory that he sought a statement from Mr. Huls in order to assist Mr. Alvidrez in exercising his right to disclose the alleged assault. Aplt. Br. at 12. "Testifying for or otherwise lawfully assisting any individual in the exercise" of the right to an appeal, complaint, or grievance granted by law is protected under the Whistleblower Protection Act. 5 U.S.C. § 2302(b)(9)(B). Mr. Baca cites *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1368 (Fed.

11

Cir. 2012), for the principle that "[i]t is error for the MSPB to not evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately." We agree that the MSPB must consider all pertinent evidence, but it need not discuss each piece of evidence in its decision. *Lowder v. Dep't of Homeland Sec.*, 504 F.3d 1378, 1383 (Fed. Cir. 2007). "The failure to discuss particular contentions in a case . . . does not mean that the [MSPB] did not consider them in reaching its decision." *Id.* Accordingly, we will not presume that the AJ ignored evidence which is not explicitly referenced in the decision.

Here, the AJ credited the sworn statements of both Ms. Montoya and Mr. Huls. Ms. Montoya overheard the interaction between Mr. Huls and Mr. Baca and provided a sworn written statement that Mr. Baca spent "easily 3 hours intimidating [Mr. Huls] into writing a statement about what happened that morning in [Ms.Pritchett's] Office." Admin. R., vol. I at 45. Her statement is consistent with a contemporaneous email she sent to Ms. Pritchett in which she said she could overhear Mr. Baca "hammering [Mr. Huls] about this statement since about 0730," "telling [Mr. Huls] to 'tell the story in his statement' . . . [and] 'paint the picture,'" and also explaining that she heard Mr. Huls respond to Mr. Baca, "I'm not putting all that in my statement." *Id.* at 463. In Mr. Huls' written statement, he explained that he felt "uncomfortable" when Mr. Baca asked him to provide a statement about the incident. *Id.* at 38. He also said that "Mr. Baca's conversational interactions within the Division with personnel at times, gave me the

impression of intimidation and perhaps humiliation." *Id.* He reiterated this position in his oral testimony before the AJ:

> [Mr. Baca] would bring people in, he would talk to them, it was almost like an interrogation and . . . I thought that was very unprofessional . . . it was very intimidating . . . having all those people standing around, people [who] had no business being there.

Aple. Supp. App. at 104–05. In considering Mr. Baca's claim that he was not trying to intimidate Mr. Huls, the AJ cited Ms. Montoya's sworn statement and found it "implausible given Montoya's undisputed testimony that [Mr. Baca] was in Huls' office pushing him for almost three hours," Admin. R., vol. II at 717, and given the corroborating evidence from Mr. Huls' statement and Ms. Montoya's email.

Attempting to intimidate a witness into providing a false statement is not protected conduct under the WPA. The Act protects an employee from adverse personnel actions for "testifying for or otherwise *lawfully assisting*" another in exercising their right as a whistleblower. 5 U.S.C. § 2302(b)(9)(B) (emphasis added). After reviewing the sworn statements and hearing the testimony, the AJ found that Mr. Baca spent three hours "*trying* to intimidate" Mr. Huls into providing a statement on behalf of Mr. Alvidrez. Admin. R., vol. II at 718.

Mr. Baca argues that as a supervisor of Mr. Alvidrez, he was required by Army and DoD policy to investigate and report on incidences of workplace violence.[6] The Army

---

[6] Mr. Baca cites an Army Instruction, which provides that: "[e]mployees will immediately notify their supervisor . . . of a job-related . . . injury. If the immediate supervisor or CDSO is not available, notify the next person in the supervisory chain," and

asserts that Mr. Baca waived this argument by not previously citing either the Army policy notice or DoD instruction. Generally, courts will not consider an issue on appeal if it was not raised before the administrative court. *Sistek v. Dep't of Veterans Affairs*, 955 F.3d 948, 953 n.1 (Fed. Cir. 2020) (concluding "argument is forfeited for failure to present it to the Administrative Judge in the first instance"). However, we do allow a party to provide "new legal authority [on appeal] for the position that he . . . advanced [below]." *Schulenberg v. BNSF Railway Co.*, 911 F.3d 1276, 1286 n.4 (10th Cir. 2018) (citation omitted). Here, Mr. Baca's citations to the Army and DoD policies constitute new legal authority in support of his claim of lawful assistance rather than a new theory of relief. He cites these policies to support his argument that Mr. Alvidrez had a right to file a complaint and that he had a duty to investigate Mr. Alvidrez's complaint.

Notably, however, Department of Defense (DoD) policies governing workplace conduct also clearly state that "[v]iolence, threats, harassment, ***intimidation***, and other disruptive behavior ***will not be tolerated in the workplace***," and that employees who engage in these practices will be subject to disciplinary actions including removal. DoD Instruction No. 1438.06 (3) (emphasis added). While Mr. Baca is correct that providing lawful assistance is a protected activity under § 2303(b)(9)(B), attempting to intimidate

---

that "[s]upervisors will investigate and report, as soon as practical after notification, any unplanned event that results in . . . injury to on-duty Department of the Army (DA) Civilian personnel." Army HQDA Policy Notice 385-3, effective 12 October 2017, Section 11(b)(1) & (c)(1)(a).

Mr. Huls in order to secure a statement in support of Mr. Alvidrez violated DoD policy and did not constitute lawful assistance. *Cf. Gunderson v. BNSF Railway Co.*, 850 F.3d 962, 969–70 (8th Cir. 2017) (holding that a railroad union president's actions went beyond the bounds of protected union activity and warranted "adverse action for violating workplace rules" where the union president harassed and intimidated witnesses during an investigation).

In sum, although Mr. Baca may have had a duty to investigate and Mr. Alvidrez may have had a right to report any injury, Mr. Baca's attempt to intimidate Mr. Huls is not protected conduct. After a review of the record, we are not persuaded by Mr. Baca's claim that the Board failed to consider his theory that he sought a statement from Mr. Huls in order to assist Mr. Alvidrez in exercising his right to disclose an alleged assault by Ms. Pritchett. Rather, the AJ credited other employees who saw or overheard the incident and contradicted Mr. Baca.

B. *Substantial Evidence Under 5 U.S.C. § 7703(c)(3)*

Next, Mr. Baca contends the AJ's determination was not supported by substantial evidence because the record included facts known to Mr. Baca which support a reasonable belief that a violation occurred, including corroborative evidence. We review the factual findings of the agency to ensure they are supported by "substantial evidence," 5 U.S.C. § 7703(c)(3), and we will only reverse if the agency's factual determinations are not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. U.S. Postal Service*, 486 F.3d 683, 687 (10th Cir. 2007).

15

Moreover, we have consistently deferred to the credibility determinations of the fact finder because "he or she is uniquely able to observe the demeanor . . . of the claimant in a direct and unmediated fashion." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001); *see also Laborers' Int'l Union of N. Am. v. NLRB*, 594 F.3d 732, 740 (10th Cir. 2010).

To be entitled to protection under the WPA, an employee must "*reasonably believe[]*" that his/her disclosure relates to "(i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8) (emphasis added). To assess whether the employee had a reasonable belief, the AJ must determine "whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee . . . could reasonably conclude" the alleged misconduct took place. 5 U.S.C. § 302(b)(14)(ii); *see, e.g.*, *Kahn v. Dep't of Justice*, 618 F.3d 1306, 1313 (Fed. Cir. 2010). Applying this standard,[7] the AJ considered the testimony of everyone who witnessed the incident. As the AJ explained:

---

[7] Mr. Baca contends the AJ applied the wrong standard in determining that he did not prove his affirmative defense and "required Mr. Baca to show that his accusations were **true**" rather than applying the reasonable belief standard. Aplt. Br. at 15 (emphasis in original). An AJ is not required to presume a whistleblower's testimony is credible in assessing his reasonable belief but instead must assess it from the vantage point of a disinterested observer and weigh contradictory evidence. *See* 5 U.S.C. § 2302(b)(14)(ii); *see also Frederick v. Dep't of Justice*, 73 F.3d 349, 352 (Fed. Cir. 1996). The AJ here did not require Mr. Baca to prove that Ms. Pritchett battered Mr. Alvidrez. Instead, he properly assessed whether there was sufficient, credible evidence to support a reasonable belief that the battery occurred and found the evidence lacking. Admin. R., vol. II at 724–28.

16

> I find no dispute that on March 7, 2018, Pritchett, Huls, and the appellant were in Pritchett's office for a meeting, and when Alvidrez came into her office, Pritchett became angry, told Alvidrez to leave, and closed the door in a manner that the door slammed behind Alvidrez. Beyond that, the witnesses' accounts diverge.

Admin. R., vol. II at 725. As a part of the May 2018 agency investigation, both Ms. Pritchett and Mr. Huls provided written statements contradicting Mr. Baca's claim that he witnessed the door hit Mr. Alvidrez. Admin. R., vol. I at 38–40, 62–65. The AJ noted that Mr. Huls' statement on March 16, 2018, was "entirely inconsistent" with Mr. Baca's testimony. Admin. R., vol. II at 726; *see also* Admin. R., vol. I at 239–40. In addition, Ms. Pritchett testified that she had a "little window" on her door through which she could see that Mr. Alvidrez was no longer in front of the door when she shut it. Aple. Supp. App. at 82. Reviewing all of the evidence, the AJ determined that Mr. Baca's testimony was not credible.[8]

---

Mr. Baca also maintains that instead of applying the reasonable belief standard, the AJ incorrectly relied on the factors specified in *Hillen v. Dep't of Army*, 35 M.S.P.R. 453 (M.S.P.B. 1987), to assess which "set of competing disputed facts [was] true." Aplt. Br. at 13. We are not persuaded. *Hillen* sets out the "general internal procedural requirements that the MSPB has established for its adjudicative processes" in order to resolve issues of credibility. *Haebe v. Dep't of Justice*, 288 F.3d 1288, 1301–02 n.32 (Fed. Cir. 2002). An AJ's determination as to the credibility of a whistleblower, however, is relevant to the reasonable belief assessment. *Kahn*, 618 F.3d at 1313; *see also Horton v. Dep't of Navy*, 66 F.3d 279, 283 (Fed. Cir. 1995) ("credibility is indeed relevant in determining [the whistleblower's] reasonable belief"), *superseded by statute on other grounds see Armstrong v. The Arcanum Group, Inc.*, 897 F.3d 1283, 1287 (10th Cir. 2018).

[8] The AJ's determination is also supported by testimony from Jason Benjamin, who worked across the hall from Ms. Pritchett's office. He testified that he could clearly see Mr. Alvidrez from the hallway and that he heard Ms. Pritchett's "door slam, total slam,

The AJ provided three additional reasons for his determination that Mr. Baca's version of events was not believable. First, Mr. Baca's claim that the door hit Mr. Alvidrez during the meeting was implausible because he could not have seen the door hit Mr. Alvidrez from his location in Ms. Pritchett's office. In addition, Mr. Alvidrez testified that he walked away and did not return to alert anyone he had been struck by the door. Aple. Supp. App. at 397. Second, the AJ found implausible Mr. Baca's claim that he immediately accused Ms. Pritchett of battery, that Mr. Huls agreed with his accusation, and that Mr. Baca then stopped the meeting because his version of events was not corroborated by either Ms. Pritchett or Mr. Huls. Third, noting that Mr. Baca had previously accused another colleague of assaulting Mr. Alvidrez, the AJ found it implausible Mr. Baca would "repeatedly witness the same employee get physically attacked or threatened." Admin. R., vol. II at 727. Any remaining doubt the AJ had as to whether Mr. Baca could have twice observed Mr. Alvidrez being attacked by a colleague was eliminated by Mr. Baca's attempt to intimidate Mr. Huls into providing a statement on March 8th. Accordingly, Mr. Baca's testimony did not provide credible "essential facts" on which a disinterested observer could rely. 5 U.S.C. §2302(14)(b)(ii). For all these reasons, the AJ provided more than sufficient support for the conclusion that a disinterested observer could not have reasonably concluded Ms. Pritchett battered Mr. Alvidrez.

---

[the door] didn't touch [Mr. Alvidrez] . . . [who] had already taken four or five steps away from the door." Aple. Supp. App. at 25–26.

With virtually no citations to the record, Mr. Baca also contends the AJ "ignored and failed to address a mountain of evidence" including the testimony of Mr. Alvidrez as well as medical records that allegedly corroborate his testimony. Aplt. Br. at 17. An AJ is required to decide whether a whistleblower had a reasonable belief based upon the facts "known to [or] readily ascertainable by" the whistleblower. 5 U.S.C. § 2302(b)(14)(ii). Thus, Mr. Alvidrez's testimony and subsequent medical records are only relevant to Mr. Baca's reasonable belief if they were "known to [or] readily ascertainable by" Mr. Baca *at the time of his March 8th disclosure. See id.; see also Webb v. Dep't of Interior,* 122 M.S.P.R. 248, 255 (2015) (Under the statute, "the test is whether the appellant had a reasonable belief that he was disclosing a violation of law, rule, or regulation at the time he made the disclosure, not in light of events or conversations occurring thereafter."); *El v. Dep't of Commerce*, 123 M.S.P.R. 76, 89 n. 11 (2015)(same), *aff'd*, 663 Fed. Appx. 921 (Fed. Cir. 2016) (unpublished)*: White v. Dep't of Air Force*, 391 F.3d 1377, 1384 (Fed. Cir. 2004) (whether asserted whistleblower had a reasonable belief is determined "at the time of his disclosure").

Mr. Baca failed to introduce credible evidence to establish the relevance of Mr. Alvidrez's testimony or medical records. While Mr. Baca testified that immediately after the incident he received an email from Mr. Alvidrez "saying he was going to the McAfee Clinic . . . [and] that he was going to the Department, the Director of Emergency Services to report the incident," Aple. Supp. App. at 205, the AJ determined Mr. Baca was not credible. Indeed, Mr. Baca's testimony is contradicted by Mr. Alvidrez, who testified that

he sent an email to Mr. Baca and Mr. Gallegos *after* returning from the McAfee Clinic. He testified the email said that he "was going home because [he] had a lower-back injury," without mentioning that he had gone to the medical clinic or that the injury was Ms. Pritchett's fault. *Id.* at 400–01. The email is not included in the record and the record does not otherwise contain any evidence that Mr. Alvidrez communicated to Mr. Baca, prior to Mr. Baca's disclosure, that he suffered an assault or sought medical treatment. Based upon the evidence included in the agency record, the AJ focused his assessment on Mr. Baca's claim that he witnessed the events inside Ms. Pritchett's office and correctly disregarded Mr. Alvidrez's testimony and the medical evidence as irrelevant to assessing Mr. Baca's reasonable belief at the time of his disclosure.

Because we affirm the AJ's finding that Mr. Baca did not make a protected disclosure under 5 U.S.C. § 2302(b)(8), we need not address the remainder of Mr. Baca's arguments that he is entitled to relief under the WPA. The decision of the MSPB is AFFIRMED.