FILED
United States Court of Appeals
Tenth Circuit

August 13, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL R. CAPPS,

    Defendant - Appellant.

No. 23-3095

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 6:21-CR-10073-EFM-1)**

_____

Jacob Rasch-Chabot, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender with him on the briefs), Denver, Colorado for Defendant-Appellant.

Carrie N. Capwell, Assistant United States Attorney (Kate E. Brubacher, United States Attorney with her on the brief), Kansas City, Kansas for Plaintiff-Appellee.

_____

Before **HARTZ**, **TYMKOVICH**, and **BACHARACH**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Defendant Michael Capps was convicted on 12 counts related to fraudulently obtaining federal funds intended for COVID-19 relief. He appeals his convictions on the ground that the district court reversibly erred by reading the jurors their instructions only

at the outset of the presentation of evidence without doing so again after the close of evidence. We conclude that he did not preserve his argument that Federal Rule of Criminal Procedure (Criminal Rule) 30(c) required the court to instruct the jury after the close of evidence and that he cannot prevail under plain-error review. We therefore affirm the judgment below.

## I.     BACKGROUND

A federal grand jury indicted Mr. Capps on 19 counts including bank fraud, false statements to a bank and the Small Business Administration, wire fraud, and money laundering. The indictment alleged that he obtained COVID-19 relief on behalf of three entities (two businesses that he owned and one foundation of which he was a member) by making false representations regarding the workforce of each.

At a pretrial conference the district court discussed its intention to read the jury instructions after jury selection and before presentation of evidence and to give the jurors individual copies of the instructions for reference during trial. It explained that in its previous experience using this practice, "jurors like it. And I've found that they take notes on the instructions as we go through the trial because of that." R., Vol. III at 24. It noted its concern that reading all the instructions before trial could be prejudicial in a criminal case if a charge gets dropped or dismissed during the trial, and it asked for counsel's input. The prosecutor said that he had participated in a case in which the court adopted this practice and "ended up liking it" because it provided "a mental road map to the jury." *Id.* at 25. Defense counsel said, "I kind of like it." *Id.* The court announced that "we'll plan to read the instructions in advance." *Id.* During the conference the court also

explained that because of the court's crowded schedule and the need to accommodate the impending retirement of one of the attorneys, the trial would proceed on Monday, Wednesday, Thursday, the following Monday, and the Wednesday thereafter if necessary.

Trial began on Monday, December 12, 2022. After the jurors were sworn in, the court delivered the jury's preliminary instructions and provided them with notebooks and a copy of the primary instructions. The court then read all 40 primary instructions to the jury before the introduction of any evidence.

At the end of the third day of trial (Thursday, December 15), the government inquired whether the court intended to reread the jury instructions. The court replied, "Oh, believe me, not a chance." *Id.* at 948. Defense counsel responded that he and the prosecutor "both thought you were going to reread them." *Id*. On the following Monday defense counsel filed a motion for the court to reread eight of the jury instructions (numbers 3, 5–9, 23, and 27). *Id.*, Vol. I at 121. Instruction No. 3 explained, "An indictment is simply a formal method of accusing a defendant of a crime" rather than evidence. *Id.* at 142. Instruction No. 5 directed that each count should be considered separately. Instruction No. 6 said that Mr. Capps's not-guilty pleas to each of the charges "put in issue every element of the crimes charged, and therefore it is the burden and responsibility of the government to prove beyond a reasonable doubt every element of the crimes charged." *Id.* at 145. Instruction No. 7 explained the presumption of innocence. Instruction No. 8 described the government's burden of proof beyond a reasonable doubt. Instruction No. 9 instructed the jury to consider only the crimes charged. Instruction No. 23 explained the good-faith defense. And Instruction No. 27 explained how the jury

Page 3

should consider evidence of Mr. Capps's good character. The motion to reread the eight

instructions stated the following grounds in its support:

> 1. These eight instructions are key to Defendant's defense, and there would be no prejudice in re-reading them.
> 2. Counsel for the Government and counsel for the defense believed at the outset of trial that the Court was entertaining reading the instructions at the beginning and the end of trial.
> 3. Defense submits that with two recesses in the midst of trial, it would assist the jury in hearing the above-referenced instructions closer in time to deliberations. Such reading would also serve Defendant's right to due process and a fair and just trial.

*Id.* at 121.

When trial resumed that day, the court denied the motion to reread the eight

instructions, saying, "I've a painful memory of a 45-minute session in which I read

instructions. . . . [A]ctually, it does compare to a Stephen King novel, is a bit of a horror

to go through that. I think it would be error for me to single out some instructions as

opposed to others. I think it would be cruel and inhumane to reread them all again." *Id.*,

Vol. III at 960. But it told defense counsel that "you may refer to them during closing

arguments if you would like, and I'd invite you to do so if you think they're important."

*Id.*

During closing arguments defense counsel specifically referenced three jury

instructions. He mentioned "Instruction No. 6," emphasizing the government's burden to

prove "every element . . . beyond every reasonable doubt." *Id.* at 1144–45. He mentioned

instruction "No. 7," emphasizing "[t]he presumption of innocence." *Id.* at 1145. And he

mentioned the good-faith defense as "among the instructions of the law that . . . you

swore you'd apply." *Id.* at 1146. He explained that the defense applies "if a plan or a

scheme [was] not carried out with an intent to defraud, if it was devised or carried out in good faith with an honest belief in the truth of the representation made" and that "[i]t's not on him to prove it. It's on them to disprove it." *Id.* at 1147.

After closing arguments the court told the jury that all the instructions it had previously read continued to apply, that upon entering the jury room the second thing they should do (after picking a foreperson) is read the court's instructions, and that they must follow the court's instructions throughout their deliberations. The jury did not reach a verdict that evening, so the court discharged the jury until Wednesday morning to resume deliberations.

The jury returned on Wednesday, December 21. The court informed the jury that it had brought in an alternate juror because one juror was no longer available. It said that the jurors "now have an obligation . . . to at least reexamine" all decisions they had already made and "make sure that the alternate juror who's been added to your ranks has an ability to participate in those decisions." *Id.* at 1174.

Later that day the jury returned its verdicts. It found Mr. Capps guilty on 12 counts, and not guilty on 6 counts. The court sentenced Mr. Capps to 27 months' imprisonment and two years of supervised release.

## II.    DISCUSSION

On appeal Mr. Capps argues that the district court reversibly erred by refusing to reinstruct the jury after the close of evidence. He relies on Criminal Rule 30(c), which states, "The court may instruct the jury before or after the arguments are completed, or at

both times." According to Mr. Capps, the rule requires the delivery of instructions "immediately before or after closing arguments." Aplt. Br. at 14.

We first address whether Mr. Capps preserved his Criminal Rule 30(c) argument before the district court and conclude that he did not and that plain-error review therefore applies. We then explain that Mr. Capps cannot prevail on plain-error review because he has not shown that any error was plain and affected the outcome of the proceeding. Finally, we reject his argument that the district court abused its discretion by not reinstructing the jury after the close of evidence even if it was not obligated to do so by Criminal Rule 30(c).

### A.    Preservation

We must first discuss what rule governs preservation in this case and what that rule means. Because the issue before us concerns jury instructions, we look first at Criminal Rule 30(d), the section of Rule 30 ("Jury Instructions") entitled "Objections to Instructions." The relevant sentence of that provision states: "A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d). The plain language is clear that a party who objects to the failure to give a requested instruction must inform the court both of its specific objection *and* the grounds for the objection. If the party asserts a new legal theory on appeal in support of its objection to a failure to give a requested instruction, that argument is unpreserved. *See United States v. Hunt*, 82 F.4th 129, 138–39 (2d Cir. 2023) (objection to jury instruction on the second element of a charged offense was not

Page 6

preserved under Criminal Rule 30(d) because defendant's only objection to the jury instructions pertained to the first element); *United States v. Peterson*, 538 F.3d 1064, 1071 (9th Cir. 2008) (defendants "objected to the jury instruction on different grounds below than they [did] on appeal" and therefore did not preserve their objection under Criminal Rule 30(d)); *United States v. Canino*, 949 F.2d 928, 940 (7th Cir. 1991) (defendants' objection to the court's failure to give a proposed instruction did not preserve their argument that the court's formulation of the instruction failed to address their venue-based theory of defense because their proposed instruction did not "actually focus attention" on the venue issue). In this appeal Mr. Capps is claiming that the district court's failure to repeat all, or at least part, of its jury instructions after the close of evidence violated Criminal Rule 30(c). But nothing said by counsel during trial referenced that rule, much less argued that the rule required reinstructing the jury after the close of evidence. Thus, the issue was not preserved.

We note, however, that even though mere proximity suggests that Criminal Rule 30(d) applies to an alleged violation of Criminal Rule 30(c), the parties' appellate arguments on preservation cite only Criminal Rule 51(b), the general rule regarding "Preserving a Claim of Error," which states: "A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." We therefore discuss that rule as well as Rule 30(d).

Our general caselaw on preservation holds that if a party asserts on appeal a ground for a request or objection that it did not bring to the district court's attention, that

Page 7

ground is unpreserved. "This court has repeatedly declined to allow parties to assert for the first time on appeal legal theories not raised before the district court, even when they fall under the same general rubric as an argument presented to the district court." *United States v. Bacon*, 950 F.3d 1286, 1292 (10th Cir. 2020) (internal quotation marks omitted); *see, e.g., United States v. A.B.*, 529 F.3d 1275, 1279 n.4 (10th Cir. 2008) ("[The defendant] was obliged to inform the district court of all of the theories under which he claimed an entitlement to relief, in order to preserve those theories for appellate review."). Criminal Rule 51(b) codifies this general principle. *See* 3B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Crim. § 843 (4th ed. 2024) ("It is not enough simply to let the court know what action is desired [to preserve a claimed error under Criminal Rule 51(b)]. The rule requires that counsel must also make known the grounds therefor[]." (internal quotation marks omitted)).

But Mr. Capps reads Criminal Rule 51(b) differently, arguing that a party preserves a claim for error simply by informing the court of the action he wishes it to take without any need to state the grounds for the request for action. This is not an off-the-wall reading of the rule. Indeed, if one ignores history and the fundamentals of sound court procedure, his reading would likely be the preferred reading, in light of general principles regarding construction of language and punctuation. Rule 51(b) states that a party may preserve a claim of error "by informing the court . . . of the action the party wishes the court to take, *or* the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b) (emphasis added). The placement of the comma and the use of the language "the grounds for that objection" instead of "the grounds for that

*request for action* or objection" indicate that there are two alternatives for preserving error (1) inform the court of the action the party wishes it to take or (2) object to the court's action and state the grounds for that objection.

A moment's reflection, however, suggests how odd this dichotomy would be. When a request to the district court is rejected, the requesting party ordinarily objects to the denial. Does the objection to the denial need to be supported by a ground for the objection? Or do we just ignore the objection? Does the issue of preservation turn on the semantics of whether the issue is framed as a request to act or as an objection to the failure to act? In any event, the language of Rule 51(b) does not expressly abrogate the traditional and well-founded proposition that a ground for relief is not preserved for appeal unless presented (if possible) to the district court. To be sure, courts should be extraordinarily cautious about imposing procedural requirements not present in rules covering the same subject matter. What makes this matter before us exceptional, however, is that the problematic language we are confronting was introduced as part of the restyling of the Federal Rules (a highly successful project that was well worth the effort even if a few problems were unintentionally created), which was not intended to change the substance of any of the restyled rules, as was declared in the advisory committee note to every restyled rule. *See, e.g., Constien v. United States*, 628 F.3d 1207, 1215 n.7 (10th Cir. 2010) (relying on advisory committee note stating that restyled rule was intended "to be stylistic only" and not to make any substantive change as ground for construing new language to convey what was clear in prior version of rule (internal quotation marks omitted)).

Page 9

A little history is informative and persuasive. It reveals that (1) the natural reading of the versions of Criminal Rule 51 before the recent restyling is contrary to Mr. Capps's position, (2) the restyling was not intended to change the substance of the rule, (3) Criminal Rule 51 has long been intended to track its civil counterpart, Federal Rule of Procedure (Civil Rule) 46, and (4) when Civil Rule 46 was restyled after the restyling of Criminal Rule 51, it adopted language clearly contrary to Mr. Capps's argument.

Criminal Rule 51 was adopted in 1944. *See* Fed. R. Crim. P. 51, advisory committee's notes to 1944 adoption. The original version of the rule said that to preserve an issue, "it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor." Fed. R. Crim. P. 51 (1946). The Advisory Committee's Notes to its adoption said that the rule is "practically identical" to Civil Rule 46 because "[i]t relates to a matter of trial practice which should be the same in civil and criminal cases in the interest of avoiding confusion."[1] Fed. R.

---

[1] At the time of the adoption of the original version of Criminal Rule 51, Civil Rule 46 stated:

> Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

Fed. R. Civ. P. 46 (1939).

Crim. P. 51, advisory committee's notes to 1944 adoption. We note that the absence of a comma before the "or" that separates the two clauses that identify the means of preserving objections ("makes known to the court the action which he desires the court to take or his objection to the action of the court") suggests that, under the original rule, parties that made known to the court the action they desired the court to take *and* parties that objected to an action of the court were *both* required to make known "the grounds therefor." *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 161–66 (2012) (providing examples).

Both Criminal Rule 51 and Civil Rule 46 were amended in 1987. The Advisory Committee's Notes to both amendments said that the amendments were technical with no substantive change intended. It appears that the only change made to the language regarding how to preserve an issue was to make it gender neutral. *See* Fed. R. Crim. P. 51 (1988) ("it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which *that party* desires the court to take or *that party's* objection to the action of the court and the grounds therefor" (emphasis added)); Fed. R. Civ. P. 46 (1988) ("it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which *the party* desires the court to take or *the party's* objection to the action of the court and the grounds therefor" (emphasis added)).

Criminal Rule 51 was most recently amended in 2002. The Advisory Committee's Notes explained that the rule was revised "as part of the general restyling of the Criminal Rules" and that the changes were "intended to be stylistic only." It was in this amendment

Page 11

that a comma was added between the two clauses that identify the means of preserving objections, and the phrase "grounds therefor" was revised to "grounds for that objection." *Compare* Fed. R. Crim. P. 51(b) *with* Fed. R. Crim. P. 51 (1988).

Five years later, Civil Rule 46 was amended. The Amendment was also intended to be "stylistic only." Fed. R. Civ. P. 46, advisory committee's notes to 2007 amendment. But the restyling made clear what the change to Criminal Rule 51 muddled. As amended, Civil Rule 46 now provides that "a party need only state the action that it wants the court to take or objects to, along with the grounds for the request or objection." Fed. R. Civ. P. 46. The phrase "along with the grounds for the *request or objection*" makes it unambiguous that the party must state its grounds for the requested action.

Thus, our understanding of Criminal Rule 51(b)—that when a party informs the court of an action it wishes the court to take, the party must also inform the court of the grounds for that request for action in order to preserve a claim of error—is the only way to harmonize the rule with its original iteration, which has not been intentionally changed substantively. And it is the only way to harmonize the rule with Civil Rule 46, which it has always intended to mirror.[2]

---

[2] We are aware that the Supreme Court in *Holguin-Hernandez v. United States*, 589 U.S. 169, 170–71 (2020), added bracketed numerals to the quoted language in Criminal Rule 51(b) when it wrote that the Federal Rules "provide two ways" for a criminal defendant to make his objection known: "'[a] party may preserve a claim of error by informing the court … of [1] the action the party wishes the court to take, or [2] the party's objection to the court's action and the grounds for that objection.'" But we do not read that opinion as adopting Mr. Capps's construction of the rule. The holding of the opinion was only that "[a] defendant who, by advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is 'greater than necessary' has thereby informed the court of the legal error at issue in an appellate challenge to the

Our understanding is also consistent with common sense and the rationale underlying the doctrine of preservation. The Supreme Court has said that the requirement of preservation "serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute." *Puckett v. United States*, 556 U.S. 129, 134 (2009). This preservation requirement also prevents such litigants from "sandbagging" by not making an argument in district court and later raising the error if the district court rules against them. *Id.* (internal quotation marks omitted). If there is a good reason for a party's objection or request, the district court is most likely to correct an error if that reason is presented to it. We see no principled ground for the distinction that Mr. Capps's reading would draw between a request for judicial action and an objection to that action. (We have already noted that a distinction between a request and an objection will often be largely semantic. For example, in this case is the alleged error the failure to grant the request to reinstruct or the overruling of the objection to not reinstructing?)

---

substantive reasonableness of the sentence. He need not also refer to the standard of review." *Id.* at 174–75. The Court explicitly declined "to decide when a party has properly preserved the right to make particular arguments supporting its claim that a sentence is unreasonably long." *Id.* at 175. That issue would have already been decided if the Court had said that all the defendant needed to do to preserve all arguments regarding the reasonableness of the sentence was to request a shorter sentence. At the least, the Court left open whether preservation required the defendant to give grounds for a request that the court take a particular action.

Thus, under either preservation rule—Criminal Rule 30(d) or 51(b)—the parties must inform the court of the grounds for their request or objection in order to preserve a claim of error.

Here, Mr. Capps did not inform the court of the grounds for his request to reinstruct the jury that he now pursues on appeal. When the government brought up the issue of whether the court would reread the instructions and the court said that it would not, defense counsel said only that he had spoken to the government's counsel "and we both thought you were going to reread them." R., Vol. III at 948. Defense counsel did not mention Criminal Rule 30(c) or say anything that might indicate Mr. Capps's current position that there is a procedural requirement to deliver instructions immediately before or after closing argument.

And his motion to reread eight instructions came no closer to bringing Criminal Rule 30(c) to the court's attention. The arguments made in the motion—that the eight instructions are "key to Defendant's defense," that counsel for both sides believed the instructions would be reread, and that with "two recesses in the midst of trial" rereading the instructions would assist the jury and serve Mr. Capps's rights to due process and a fair trial—similarly did not speak to any requirement of the rules of procedure. R., Vol. I at 121. On the contrary, the motion's emphasis on eight specific instructions and the particular trial schedule would indicate that the argument was not based on a generally applicable procedural requirement.[3]

---

[3] Although he does not mention this on appeal, we note that Mr. Capps moved for a new trial after his conviction and cited Criminal Rule 30(c) in that motion. R., Vol. I at

Mr. Capps's reply brief cites three cases in which courts held that an issue was preserved even though the party did not explicitly cite the law at issue. But these cases stand only for the proposition that an objection can be adequately preserved by bringing the grounds for that objection to the court's attention even when the party does not cite the specific legal authority they cite on appeal. *See Baca v. Dep't of the Army*, 983 F.3d 1131, 1140 (10th Cir. 2020) (discharged employee challenging propriety of discharge can cite new legal authority for the position advanced below if it is not a new theory of relief; employee had argued that his conduct was justified as whistleblowing and on appeal cited government policies requiring him to investigate and report incidents of workplace violence); *United States v. Johnson*, 710 F.3d 784, 788 (8th Cir. 2013) (defendant adequately preserved argument that admission of police report at revocation proceeding violated his right to due process even though he did not cite Criminal Rule 32.1, which codifies the minimal requirements of due process); *United States v. Gray*, 410 F.3d 338, 347 (7th Cir. 2005) (an objection that did not cite the specific rule at issue was preserved when "[i]t was clear to everyone at the hearing that the parties were arguing about" that

---

238 ("Whereas Rule 30(c) allows the Court to instruct the jury before or after the arguments are completed or at both times, the 10th Circuit has explicitly stated its preference to instruct the jury after the close of the evidence." (citing *United States v. Starks*, 34 F.4th 1142, 1163 (2022)). But it is not cited for the proposition that it required instructing the jury after the close of evidence. On the contrary, the motion seems to assume that the rule permitted what the district court did and instead argues that circuit precedent *favors* giving instructions after close of the evidence. The district court denied the new-trial motion as untimely and on the merits. But this motion would not preserve his claim of error anyway because Criminal Rule 51(b) requires the issue to be raised "when the court ruling or order is made or sought" and Criminal Rule 30(d) requires the issue to be raised "before the jury retires to deliberate."

rule (internal quotation marks omitted)). As we have said, Mr. Capps did nothing to bring the grounds that he now relies on to the court's attention.

Thus, Mr. Capps's claim of error based on Criminal Rule 30(c) was not preserved in the court below.[4] We therefore review his argument for plain error. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

### B.    Plain-Error Review

We will reverse on plain-error review only if "(1) there is error; (2) that is plain; (3) that affects substantial rights, or in other words, affects the outcome of the proceeding; and (4) substantially affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Chavez*, 723 F.3d 1226, 1232 (10th Cir. 2013). We first address, without deciding, whether the district court erred by not rereading the instructions after the close of evidence. We then conclude that Mr. Capps cannot prevail under the second and third prongs of plain-error review.

---

[4] Mr. Capps may also be making two further arguments regarding preservation. First, he says that his challenge to the failure to reread the instructions was "preserved because the district court expressly addressed the issue." Aplt. Reply Br. at 4. But the court made no mention of Criminal Rule 30(c). Second, he contends that it would have been futile for him to complain about the failure to reinstruct. But a litigant is excused under the "futility" exception to the objection requirement only "if the district court is aware of the party's position and it is plain that further objection would be futile, where the litigant's position was clearly made to the district court." *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1172 (10th Cir. 2003) (internal quotation marks and brackets omitted). That exception has no relevance here since, again, Mr. Capps never mentioned Criminal Rule 30(c).

Again, under Criminal Rule 30(c), "The court may instruct the jury before or after the arguments are completed, or at both times." The government argues that the plain meaning of "before or after the arguments are completed" is that the trial court has "wide discretion" on the timing of instructions and is not required to instruct the jury immediately before or after closing arguments. Aplee. Br. at 11. Mr. Capps argues that "the plain language of the rule clearly implies temporal proximity with closing arguments" and that "the most logical reading of the rule is that the jury instructions must be given *right* before or *right* after closing arguments." Aplt. Br. at 15. Mr. Capps's argument finds support in common parlance, comparison to other criminal rules, the history of the rule, and potential problems with the procedure employed in this case.

First, in common parlance, doing something "before or after" a specified event often suggests temporal proximity to that event—not literally any time. *See* Aplt. Reply Br. at 8. For example, the question, "Shall we get drinks before or after dinner on Friday evening?" would certainly not be understood as a suggestion that the parties get drinks *any time* before or after dinner on Friday evening, such as Thursday evening or Sunday afternoon. Rather, it is a suggestion that they get drinks either right before or right after dinner.

Moreover, comparison to other criminal rules suggests that Criminal Rule 30(c) would have used the phrase "any time" if its intention was to permit the delivery of instructions at *literally* any time. The criminal rules often use the phrase "any time" to indicate something may occur at any time. *See, e.g.*, Fed. R. Crim. P. 7(e) ("[T]he court may permit an information to be amended at *any time* before the verdict . . . ." (emphasis

added)); Fed. R. Crim. P. 12(c)(2) ("At *any time* before trial, the court may extend or reset the deadline for pretrial motions." (emphasis added)); Fed. R. Crim. P. 23(b)(2) ("At *any time* before the verdict, the parties may, with the court's approval, stipulate in writing [to a smaller jury] . . . .") (emphasis added)); Fed. R. Crim. P. 32(i)(1)(D) ("At sentencing, the court: may, for good cause, allow a party to make a new objection at *any time* before sentence is imposed." (emphasis added)); Fed. R. Crim. P. 32.2(b)(4)(A) ("At sentencing—or at *any time* before sentencing if the defendant consents—the preliminary forfeiture order becomes final as to the defendant." (emphasis added)); Fed. R. Crim. P. 32.2(b)(7) ("At *any time* before entry of a final forfeiture order, the court . . . may order the interlocutory sale of property alleged to be forfeitable." (emphasis added)).

In addition, the history of Criminal Rule 30(c) supports Mr. Capps's reading. Before the 1987 Amendments to Criminal Rule 30, the rule required that the jury be instructed after closing arguments. *See* Fed. R. Crim. P. 30, advisory committee notes to 1987 amendments; *see also* Fed. R. Crim. P. 30 (1966) ("[T]he court shall instruct the jury after the arguments are completed."). After the 1987 Amendment, the rule said, "The court may instruct the jury before or after the arguments are completed or at both times." Fed. R. Crim. P. 30 (1988). And the Advisory Committee Notes explained that the rule was amended to permit instructions before closing arguments in the discretion of the trial court, noting that "[i]n some districts, usually where the state practice is otherwise, the parties prefer to stipulate to instruction before closing arguments." These States, the Notes said, permit courts to instruct the jury before closing arguments so that the parties have an opportunity to argue using the exact language used in the instructions. The Notes

Page 18

specifically referenced Missouri, whose rules of criminal procedure at that time required reading the instructions to the jury "[a]t the close of all evidence." Mo. R. Crim. P. 28.02 (1986). The Notes also said that by permitting the court to instruct the jury before or after arguments or both, the amendment "assures that the court retains power to remedy omissions in pre-argument instructions or to add instructions necessitated by the arguments."

The Advisory Committee Notes to the 1987 Amendment appear consistent with Mr. Capps's view that the instructions must be read close in time to closing arguments. First, the Notes indicate that the rule was amended to permit courts to follow state procedure regarding jury instructions and referenced a specific state procedure that required delivering instructions "[a]t the close of all evidence," Mo. R. Crim. P. 28.02 (1986), which is perhaps indicative of the type of procedure that the Committee had in mind. Second, the explanation that the Amendment assures that courts retain the power to add instructions "necessitated by the *arguments*" but not by the *evidence* suggests that it does not contemplate instructions being given before the presentation of evidence. If instructions could be given before the close of evidence, surely there would be times when the presentation of certain evidence would necessitate the addition of special instructions, yet the Amendment is silent as to that circumstance.

On the other hand, we note that Mr. Capps's interpretation of Criminal Rule 30(c) is somewhat undermined by comparison with its companion civil rule, Civil Rule 51(b)(3). When Criminal Rule 30 was adopted in 1944, the Advisory Committee Notes explained that the rule "corresponds to Rule 51 of the Federal Rules of Civil Procedure"

Page 19

and that "on a point such as instructions to juries there should be no difference in procedure between civil and criminal cases." The version of Civil Rule 51 that was in effect at the time provided that "the court shall instruct the jury after the arguments are completed," Fed. R. Civ. P. 51 (1939), the same language used in Criminal Rule 30 before the 1987 Amendment. *See* Fed. R. Crim. P. 30 (1966) ("[T]he court shall instruct the jury after the arguments are completed.").

Like Criminal Rule 30, Civil Rule 51 was amended in 1987. In language functionally equivalent to Criminal Rule 30, it provided: "The court, at its election, may instruct the jury before or after argument, or both." Fed. R. Civ. P. 51 (1988). And, similar to the Advisory Committee's Notes to the 1987 Amendment of Criminal Rule 30, the Advisory Committee's Notes explained that the Amendment would permit counsel to deliver their arguments in light of the precise words given in the instructions and specifically referenced the Missouri system. *See* Fed. R. Civ. P. 51, advisory committee's notes to 1987 amendment. Thus, Civil Rule 51 and Criminal Rule 30 were practically identical both before and after their 1987 Amendments.

But Civil Rule 51 was amended again in 2003 to "reflect[] common practice." *See* Fed. R. Civ. P. 51, advisory committee's notes to 2003 amendment. After that Amendment the rule provided that the court "may instruct the jury at any time after trial begins and before the jury is discharged." Fed. R. Civ. P. 51(b)(3) (2006). And after being amended again in 2007 as part of the general restyling of the Civil Rules (so the changes were "intended to be stylistic only," Fed. R. Civ. P. 51, advisory committee's notes to 2007 amendment), it now provides that the court "may instruct the jury at any time before

the jury is discharged." Fed. R. Civ. P. 51(b)(3). Thus, it no longer includes any reference to closing arguments and therefore contains no language suggesting that instructions must be delivered close in time to closing arguments.

We see no reason why the civil and criminal rules should diverge on the matter of the timing of instructions, so interpreting Criminal Rule 30(c) to mirror Civil Rule 51(b)(3) would be reasonable. But because only the civil rule was amended to "reflect[] common practice" in 2003, we cannot say with assurance that the rules were intended to be identical in function.

Finally, we should note some concerns one may have with reading instructions aloud to the jury before presentation of the evidence but not after the close of evidence. First, as the district court recognized in this case, confusion, even prejudice, may result if some charges are dismissed before the close of evidence. Second, instructing the jury on the governing law at the outset of trial may encourage jurors to reach firm views about how to decide the case before deliberations, despite instructions to keep an open mind until then. And even though it may be hard to *show* prejudice when the jurors are provided written copies of the instructions and counsel can refer to them in closing argument, there is probably no better way to convey the dignity and importance of the proceedings than for the presiding judge to read the instructions as the jurors retire to deliberate.

In short, we find support for Mr. Capps's argument; but even if he is correct in his interpretation of Criminal Rule 30(c), he cannot prevail under plain-error review because

Page 21

he falls short of satisfying the requirements of the plain-error test that the error be plain and that the error be prejudicial.

First, any error was not plain. An error is plain if it is "so clear or obvious that it could not be subject to any reasonable dispute," meaning that it is "contrary to well-settled law." *United States v. Starks*, 34 F.4th 1142, 1157 (10th Cir. 2022) (internal quotation marks omitted). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *Id.* (internal quotation marks omitted).

On the issue before us we are not aware of any case from this court or any other federal court of appeals reading Criminal Rule 30(c) to require instructing the jury after the close of evidence. In fact, this court has explicitly acknowledged that this question is unresolved. In *Starks* the district court delivered the full set of jury instructions before the presentation of evidence and did not reinstruct the jury at the conclusion of evidence. *See* 34 F.4th at 1150, 1154. On appeal we held that the cumulative effects of three errors—the government's argument to the jury that the presumption of innocence no longer existed after the presentation of evidence, the court's improper admission of expert testimony, and the government's vouching for a witness's credibility—required reversal of the defendant's conviction. *See id.* at 1156. The court said that the presumption-of-innocence statement had some prejudicial effect on the trial and the district court's "unconventional" timing in delivering instructions may have undermined the capacity of the instructions to mitigate the prejudice. *Id.* at 1160. But it stopped short of holding that the timing of the instructions itself was an error, saying,

Page 22

> We have never opined on the propriety of this unconventional instructional approach, and we do not need to lay down a one-size-fits-all categorical rule on the subject to resolve this case. In this regard, we recognize that the federal rules grant trial courts a certain amount of discretion regarding when they instruct the jury.

*Id.* at 1163 (citing Fed. R. Crim. P. 30(c)). It did observe, however, that "some courts have deemed such an unconventional approach—involving the pre-evidence oral delivery of instructions—to be problematic and even legally erroneous." *Id.*; *see also id*. at 1166 (citing empirical research suggesting the unique value of oral instructions, particularly regarding the beyond-a-reasonable-doubt burden and the presumption of innocence). "[T]his is primarily because of concerns regarding the jury's capacity to remember important legal principles before they deliberate." *Id.* at 1163. But the only federal case it cited—*United States v. Ruppel*, 666 F.2d 261, 274 (5th Cir. 1982)—was decided before the 1987 Amendments to Criminal Rule 30(c). The rule now permits instructions "before or after the arguments are completed," Fed. R. Crim. P. 30(c), as opposed to "after the arguments are completed," Fed. R. Crim. P. 30 (1966). Thus, *Starks* compels the conclusion that any error here was not plain.

Moreover, Mr. Capps cannot prevail under the third prong of plain-error review. To satisfy this prong, he "has the burden to show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Benford*, 875 F.3d 1007, 1017 (10th Cir. 2017) (internal quotation marks omitted).

That standard was not satisfied here. The district court read the instructions to the jury on the first day of trial and provided each juror with a written copy of the instructions. After closing arguments it instructed the jury that all the instructions it had

previously read continue to apply; that upon entering the jury room, the second thing they should do, after picking a foreperson, is to read the court's instructions; and that they must follow the court's instructions throughout their deliberations.

Mr. Capps argues that the oral instructions given before opening statements cannot cure any prejudice because "jurors have a limited capacity to retain complex legal concepts." Aplt. Reply Br. at 22; *see Starks*, 34 F.4th at 1163 (noting "concerns regarding the jury's capacity to remember important legal principles before they deliberate"). He also asserts that juror access to the written instructions was insufficient to cure the failure to give oral instructions. *See Starks*, 34 F.4th at 1166 ("Many jurors may not adequately comprehend written instructions. It is no secret that jury instructions are often written in language more suitable for lawyers than laypersons." (brackets and internal quotation marks omitted)). But any risk that a juror both forgot important oral instructions and inadequately comprehended the written instructions could be ameliorated by defense counsel, who was told by the court that he could refer to the instructions during closing arguments and who explicitly referenced and discussed several jury instructions during closing arguments, including those on the burden of proof beyond a reasonable doubt, the presumption of innocence, and the good-faith defense. *See Ruppel*, 666 F.2d at 274–75 ("The district judge charged the jury on the presumption of innocence at the beginning of the trial and referred to these instructions at the outset of his final charge. Appellant's counsel referred to the presumption of innocence during his closing argument. Given this background, we are unwilling to believe that the jury retired to deliberate less than fully aware of the presumption of innocence."); *United States v. Payne*, 944 F.2d 1458, 1467–

Page 24

68 (9th Cir. 1991) (failure to instruct on the presumption of innocence did not constitute plain error in part because the district court emphasized the presumption of innocence during *voir dire* and defense counsel reminded the jury of the presumption of innocence in closing argument). And we are not convinced that the written instructions were ineffective in at least helping to minimize any prejudice. *See United States v. Becerra*, 939 F.3d 995, 1006–08 (9th Cir. 2019) (Graber, J., dissenting) (although the district court erred by failing to read all instructions to the jury aloud, the error was harmless because the court orally instructed the jurors to read the written instructions and the jurors individually confirmed in open court that they had read the instructions, and because "[m]any people absorb information better in writing [and] there is no way to know whether jurors are listening when oral instructions are given."). *But see id.* at 1004 (majority opinion) (a "virtually complete failure" to deliver oral instructions is "structural error").

Mr. Capps also argues that the harm caused by failing to read the instructions immediately before or after closing arguments was compounded by the "sporadically scheduled trial, the late addition of an alternative juror, and the complexity of the legal and factual issues presented." Aplt. Reply Br. at 22; *see* Apt. Br. at 23 (the jury's ability to meaningfully comprehend "the complex legal standards announced at the outset of trial" was undermined because the trial "required the jurors to intently focus on the complicated evidence presented, diligently keep track of multiple financial institutions, corporate entities, loan applications, and financial transactions, and thoroughly examine mind-numbing financial records"). But even if the length and intensity of the trial may

Page 25

have drained the memories of the jurors, they were able to refresh those memories with their individual copies of the instructions throughout the trial and deliberations, and defense counsel at closing argument could, and did, emphasize to them the instructions he thought most important.

We conclude that Mr. Capps has not satisfied his burden of showing that under these circumstances there was a reasonable probability that the court's failure to read the instructions after the close of evidence affected the result of the trial.

### C.    Abuse of Discretion

Mr. Capps also argues that even if district courts are permitted to instruct the jury at the beginning of trial in some cases, doing so was an abuse of discretion in this case. "A court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *United States v. Mobley*, 971 F.3d 1187, 1195 (10th Cir. 2020) (brackets and internal quotation marks omitted). We see no abuse of discretion here.

The district court's decision to deliver instructions at the beginning of trial was based on its own experience and judgment and input from counsel. The court explained its reasoning for delivering instructions in this manner, noting that based on previous experience "[t]he jurors like it. And I've found that they take notes on the instructions as we go through trial because of that." R., Vol. III at 24. It expressed its concern that reading all instructions before trial could be prejudicial if a charge gets dropped or dismissed during the trial and asked for counsel's input. The prosecutor noted that he was

Page 26

part of a case in which the court used this practice and "ended up liking it" because it provides "a mental road map to the jury." *Id.* at 25. Likewise, defense counsel said, "I kind of like it." *Id.*

Mr. Capps argues that the district court abused its discretion because it had no reason for refusing to reread instructions at the close of evidence other than that, as he claims, it "could not be bothered." Aplt. Br. at 23. But the court did explain its reluctance, saying, "I've a painful memory of a 45-minute session in which I read instructions . . . it does compare to a Stephen King novel, is a bit of a horror to go through that. I think it would be error for me to single out some instructions as opposed to others. I think it would be cruel and inhumane to reread them all again." R., Vol. III at 960. The court's concerns about unnecessarily wearying the jury and not singling out certain instructions may reflect a minority view, but they do not rise to an abuse of discretion.

And, again, the court also took steps to ensure the jury would not forget the instructions by the end of trial by providing each juror with a written copy of the instructions; instructing the jury after closing arguments that all the instructions that it previously read continue to apply; instructing the jury that upon entering the jury room, the second thing they should do, after picking a foreperson, was to read the court's instructions; and instructing the jury that they must follow the court's instructions throughout their deliberations. Also it suggested that defense counsel could refer to the instructions during closing argument, which defense counsel did.

Finally, Mr. Capps argues that reinstructing the jury was necessary given the "extremely unusual and disjointed manner" of the trial schedule and the complexity of

Page 27

the case. Aplt. Br. at 21–24. But as we have already explained, these arguments are not compelling; they do not establish an abuse of discretion. The trial court could reasonably believe that the procedure adopted would be adequate, and perhaps would advance the cause of justice more than the standard procedure.

### III.    CONCLUSION

We **AFFIRM** the judgment below.