FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANTHONY BRIAN WALKER,

    Defendant - Appellant.

No. 23-7038

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:22-CR-00012-RAW-1)**
_____

Daniel L. Kaplan, (Molly A. Karlin, Assistant Federal Public Defender, and Jon M. Sands, Federal Public Defender, on the briefs), Phoenix, Arizona, for Defendant-Appellant.

Lisa C. Williams, Special Assistant United States Attorney, (and Christopher J. Wilson, United States Attorney, with her on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee.

_____

Before **MATHESON**, **KELLY**, and **MORITZ**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

Defendant-Appellant, Anthony Brian Walker, appeals from his conviction of first-degree murder in Indian Country, 18 U.S.C. §§ 1111(a), 1151, & 1153, for which he was sentenced to life imprisonment. I R. 528–29. He argues that the district court erred in

failing to instruct the jury on his theory of imperfect self-defense and the government's burden to disprove that theory as an element of first-degree murder. Aplt. Br. at 2–3. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

On November 29, 2021, Mr. Walker, a member of the Chickasaw Nation, was riding his bicycle near Willard Middle School in Ada, Oklahoma. I R. 111, 433. Three teenagers — including the victim, Jason Hubbard — were driving along that same road in a red SUV and passed Mr. Walker while on their way to buy sodas from a convenience store. Id. at 110–11. The driver missed the turn to the convenience store, so she turned the vehicle around. Id. at 138. When the SUV passed Mr. Walker's bicycle again, Mr. Walker spit at the car. Id. at 139–40.

Mr. Walker approached the car while at a nearby stop sign and accused the teenagers of following him. Id. at 208–11. As Mr. Walker approached, Mr. Hubbard pulled a firearm from the SUV's center console and placed it on his lap. Id. at 149–50. Mr. Walker saw the gun and said that he was not afraid of it. Id. at 151. Mr. Walker then punched Mr. Hubbard through the open passenger side window. Id. In response, Mr. Hubbard opened the car door and knocked Mr. Walker down to the ground with one punch. Id. at 153–54. Mr. Hubbard left the firearm in the car and closed the door behind him. Id. at 151–52. The driver exited the SUV and intervened before the fight could proceed. Id. at 155. The teenagers got back into the SUV and circled around the block to

2

the crosswalk where the fight happened before continuing to drive towards the convenience store.[1] Id. at 118–19.

Teachers at a nearby school saw the fight. Id. at 176, 189. One teacher asked Mr. Walker if he wanted to get help or to call the police, but Mr. Walker said no and left the scene. Id. at 190–91. Mr. Walker then stopped in front of a nearby house and searched through his backpack while looking in the direction of the SUV. Id. at 290. Mr. Walker retrieved a knife from his backpack and approached the SUV while it was in the convenience store's drive-through line. Id. at 299–300. The teenagers saw Mr. Walker approaching and the driver called 911. Id. at 122. Mr. Hubbard rolled down his window and Mr. Walker stabbed Mr. Hubbard. Id. The driver took Mr. Hubbard to the hospital, where he died of a stab wound. Id. at 124, 320.

Mr. Walker turned himself in the next morning. Id. at 349. Though he did not testify at trial, Mr. Walker voluntarily interviewed with FBI agents. Id. at 351. He admitted to spitting at the vehicle, approaching it at the stop sign, and throwing the first punch. Id. at 354, 361. He also admitted to stabbing Mr. Hubbard while the SUV was in line at the drive-through because he knew that Mr. Hubbard had a gun and he believed it was an "advantageous" time to act. Id. at 358.

---

[1] A witness from a nearby school believed that the SUV was circling the block looking for Mr. Walker again. I R. 450. The driver of the SUV testified that they returned to the scene because Mr. Hubbard's paintball gun was missing and may have fallen out during the fight. Id. at 118. The teenagers collected the paintball gun from the scene of the fight and continued driving toward the convenience store. Id. at 118, 260.

Prior to trial, both parties filed proposed jury instructions. I Supp. R. 22–58, 77–103. Mr. Walker also submitted a trial brief requesting that the court instruct the jury on self-defense, second-degree murder, and heat of passion. Id. at 16–17, 18–19. His trial brief in support of those instructions asserted that "Mr. Walker reasonably believed he was in imminent danger of death . . . and stabbed Mr. Hubbard as a means of self-defense." Id. at 17. His trial brief also asserted that he was entitled to an instruction on heat of passion because "he was in fear of his life" when he stabbed Mr. Hubbard. Id. at 19. Accordingly, Mr. Walker proposed a modified version of the Tenth Circuit's pattern jury instruction 2.52 for first-degree murder with two additional elements requiring the government to prove that: (1) "the killing was not done in the heat of passion on sudden provocation," and (2) "the killing was not done in self-defense." Id. at 53. Mr. Walker's trial brief and proposed instructions did not include any request for an instruction on imperfect self-defense. Id. at 14–58.

At trial, Mr. Walker's trial counsel repeatedly argued that the killing was committed in heat of passion and self-defense. Mr. Walker's opening statement emphasized that the facts of the case spanned only about 26 minutes and that "[t]his case is about the heat of passion." I R. 105–07. Accordingly, the district court's final instructions included an instruction on self-defense, Mr. Walker's proposed modified pattern instruction for first-degree murder containing heat of passion and self-defense as elements, and instructions on the lesser-included offenses of second-degree murder,

4

voluntary manslaughter, and involuntary manslaughter.[2]  Id. at 41–46.  As relevant to this

appeal, Mr. Walker's trial counsel objected to the instruction on first-degree murder

stating:

> In the 9th Circuit, the government has to prove all the lessers beyond a
> reasonable doubt.  So we would ask that involuntary be included as an
> element that the government has to prove beyond a reasonable doubt for first,
> second and voluntary.

Id. at 492.[3]  The district court overruled this objection.  Id.  In closing arguments, Mr.

Walker's trial counsel again argued for self-defense and heat of passion, stating:

> [F]rom [Mr. Walker's] perspective, he was acting on insult, fight or flight.  In
> his mind it was self-defense.  To others it may not be self-defense.  But to
> him, in his mind, this was how he was defending himself . . . .  [F]rom other's
> perspectives, this may not have been the perfect self-defense under the law.
> But this self-defense informs, and it leads to the question of intent and heat
> of passion.

---

[2] The record in this case does not reflect the genesis of the instruction on involuntary manslaughter.  Neither party included an instruction on involuntary manslaughter in their proposed instructions.  See I Supp. R. 22–58, 77–102.  At oral argument, Mr. Walker's appellate counsel indicated the parties met off the record with the district judge's law clerk to go over their suggestions, proposals, and objections to the jury instructions.  See I R. 252; Oral Arg. at 01:10–01:40.  Thereafter, the instruction appeared.  We have "repeatedly counseled" against having law clerks settle jury instructions.  United States v. Bornfield, 184 F.3d 1144, 1145–46 (10th Cir. 1999).  Preliminary conferences with law clerks are usually off the record and thus will lead to preservation issues, absent counsel making a record on the issue.  See Dixon v. City of Lawton, 898 F.2d 1443, 1447 (10th Cir. 1990).  Moreover, "it is the judge's sole responsibility to resolve issues concerning the instructions and [] reliance upon law clerks for this function is improper."  Id.  Though certainly not outcome determinative, we again remind that even preliminary instruction conferences should be conducted by the judge.

[3] It seems clear that counsel misspoke and meant to ask that involuntary manslaughter be included as an element that the government has to disprove (not prove) for a murder or voluntary manslaughter conviction.  This is the argument that Mr. Walker advances on appeal.  Aplt. Br. at 35.  Regardless, the trial judge understood Mr. Walker's objection.  I R. 492.

Id. at 511–12.  The jury found Mr. Walker guilty of first-degree murder after less than two

hours of deliberation.  I Supp. R. 117.

## Discussion

On appeal, Mr. Walker argues that the district court erred in failing to instruct the

jury on his theory of imperfect self-defense and the government's burden to disprove

imperfect self-defense as an element of first-degree murder.  Aplt. Br. at 2–3; Aplt. Reply

Br. at 4–5.  The government argues, in turn, that Mr. Walker's claim is subject to plain-

error review because he never requested an imperfect self-defense instruction.[4]  Aplee.

Br. at 13.  We agree with the government that Mr. Walker has not preserved this claim,

and we find no plain error requiring reversal.

### A. Mr. Walker has not preserved his challenge to the district court's jury instructions.

To preserve an objection to jury instructions, a party "must inform the court of its

specific objection and the grounds for the objection before the jury retires to deliberate."

---

[4] The government argues not only that Mr. Walker forfeited his argument on appeal by failing to object before the district court, but also that he has waived his argument entirely under the invited error doctrine.  Aplee. Br. at 14.  "Under the invited-error doctrine, this Court will not engage in appellate review when a defendant has waived his right to challenge a jury instruction by affirmatively approving it at trial." United States v. Jereb, 882 F.3d 1325, 1335 (10th Cir. 2018) (quotations omitted). However, the government's contention is undermined by the fact that Mr. Walker is not challenging an instruction that he proffered himself.  Rather, he is challenging the district court's failure to give any instruction on imperfect self-defense.  Aplt. Reply Br. at 6. "In any event, we need not decide whether there was a waiver because we affirm on plain-error review."  United States v. Sago, 74 F.4th 1152, 1157 n.2 (10th Cir. 2023).

Fed. R. Crim. P. 30(d).  If a party presents a new argument on appeal in support of its objection to a jury instruction, that new argument is unpreserved.  United States v. Capps, 112 F.4th 887, 891 (10th Cir. 2024).  Relatedly, Tenth Circuit Rule 28.1(A) requires that, "[f]or each issue raised on appeal, all briefs must cite the precise references where the issue was raised and ruled on."

Here, Mr. Walker points to the following objection made by his trial counsel at the jury instructions conference:

> In the 9th Circuit, the government has to prove all the lessers beyond a reasonable doubt.  So we would ask that involuntary be included as an element that the government has to prove beyond a reasonable doubt for first, second and voluntary.

I R. 492; Aplt. Br. at 29.  Mr. Walker acknowledges that this objection makes no mention of imperfect self-defense, but nevertheless claims that it preserves his argument on appeal because the involuntary manslaughter instruction was somehow an imperfect self-defense instruction.  Aplt. Reply Br. at 3; Oral Arg. at 02:43–02:57.

This claim improperly conflates involuntary manslaughter and imperfect self-defense.  Involuntary manslaughter is a killing that is the result of actions that constitute gross negligence.  United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000).  Involuntary manslaughter is a lesser-included offense of first-degree murder.  Sago, 74 F.4th at 1159.  Comparatively, imperfect self-defense is a mitigating defense that requires the defendant to prove that he "subjectively believed that the use of deadly force was necessary to prevent death or great bodily harm to himself or others, [even if] his belief was not objectively reasonable[.]"  United States v. Britt, 79 F.4th 1280, 1287 (10th Cir.

7

2023). Though neither party raises it, we have also recognized that imperfect self-defense can be a defense when a defendant "attempt[s] to use nondeadly force, but d[oes] so in a criminally negligent manner and death result[s]." United States v. Benally, 146 F.3d 1232, 1237 (10th Cir. 1998). A defendant who succeeds in asserting imperfect self-defense is guilty of involuntary manslaughter. Britt, 79 F.4th at 1287. But this does not mean that an instruction on involuntary manslaughter is the same as an instruction regarding imperfect self-defense. See Sago, 74 F.4th at 1159–60.

Mr. Walker seeks to avoid this significant legal difference by arguing that the wording of the involuntary manslaughter instruction was based on a theory of imperfect self-defense. Aplt. Reply Br. at 3; Oral Arg. at 02:43–02:57. The involuntary manslaughter instruction in this case was a variation on Tenth Circuit Pattern Instruction 2.54.1. This pattern instruction provides the district court with alternatives for instructing on the first element regarding how the defendant caused the death of the victim. See Tenth Cir. Crim. Pattern Jury Inst. No. 2.54.1. One such alternative would read as follows:

> *First*: the defendant caused the death of the victim named in the indictment while the defendant was committing a lawful act in an unlawful manner, or without due caution and circumspection, which act might produce death[.]

Id. Compare that pattern instruction language with the district court's involuntary manslaughter instruction in this case, which read:

> *First*: on or about November 29, 2021, the defendant caused the death of Jason Edward Hubbard, Jr. while protecting himself lawfully but using excessive force without due caution and circumspection, which act might produce death[.]

8

I R. 51.  This instruction, which largely tracks the pattern instruction for involuntary manslaughter, may imprecisely raise a version of imperfect self-defense based on criminal negligence.  But it makes no mention of the requirement that the defendant "subjectively believed that the use of deadly force was necessary to prevent death or great bodily harm to himself or others, [even if] his belief was not objectively reasonable[.]" Britt, 79 F.4th at 1287; see also Tenth Cir. Crim. Pattern Jury Inst. No. 1.28.1 (requiring an actual but unreasonable belief of imminent danger of death or great bodily harm and that the force used in response was necessary to prevent death or great bodily harm).[5] And when Mr. Walker requested that the involuntary instruction be incorporated in the first-degree murder charge, he did not argue that his request was necessary to put imperfect self-defense before the jury, nor did he ask that the government be required to disprove that he "acted out of a subjective fear" to convict him of murder.  Aplt. Reply Br. at 29.  Also undermining Mr. Walker's claim is the fact that, despite his assertion that this involuntary manslaughter instruction was an imperfect self-defense instruction, he also wrote that "the involuntary manslaughter instruction references imperfect self-defense only obliquely."  Id. at 15 (emphasis added).  Mr. Walker's objection to the exclusion of involuntary manslaughter from the first-degree murder instruction did not raise the same imperfect self-defense argument which he raises on appeal, and thus does not preserve his claim.  See Capps, 112 F.4th at 891.

---

[5] We note that Tenth Circuit Criminal Pattern Jury Instruction 1.28.1 was only recently added to the pattern instructions in February 2025.  This new pattern instruction has no bearing on our decision, and we provide it only for the sake of example.

We recently decided another case involving a claim of imperfect self-defense, United States v. Brown, No. 23-7041, 2025 WL 596288 (10th Cir. Feb. 25, 2025). There, we held that the district court committed plain error by omitting the defendant's requested instruction on involuntary manslaughter which "incorporated the theory of imperfect defense of another." Id. at *5. The record in that case indicates that the defendant also requested an instruction informing the jury of the theory of its involuntary manslaughter defense: "Involuntary manslaughter is a killing, including in defense of another, if the defendant is criminally negligent." I R. (23-7041) 233. Thereafter, the proposed instruction provided as an element that: "the victim was killed while the defendant was committing a lawful act, including defense of another, in an unlawful manner, or without due caution and circumspection, which act might produce death[.]" Id. at 239. Although we held that to be sufficient to warrant the involuntary manslaughter instruction which was omitted, we certainly did not pass on the form of an imperfect self-defense instruction and its particulars. See Brown, 2025 WL 596288, at *5 (noting that "[t]he parties' dispute is narrowly focused on whether the evidence warranted the imperfect defense of another portion of Defendant's requested involuntary manslaughter instruction").

Mr. Walker also argues that he preserved this issue because imperfect self-defense was his "primary theory of defense" at trial. Aplt. Br. at 23, 26–27; Aplt. Reply Br. at 3. This claim is belied by the record. Mr. Walker points to the following statement by his trial counsel during closing argument:

10

> [F]rom [Mr. Walker's] perspective, he was acting on insult, fight or flight. In his mind it was self-defense. To others it may not be self-defense. But to him, in his mind, this was how he was defending himself . . . . [F]rom other's perspectives, this may not have been the perfect self-defense under the law.

I R. 511–12 (emphasis added).

However, when read in context, this statement discusses the theories of defense that Mr. Walker actually raised at trial — heat of passion and self-defense. Indeed, after stating that "this may not have been the perfect self-defense," trial counsel continued that "this self-defense informs, and it leads to the question of intent and <u>heat of passion</u>." Id. (emphasis added). Regardless, this passing mention of a less than perfect self-defense at closing arguments cannot suffice to preserve Mr. Walker's argument for appeal. See Fed. R. Crim. P. 30(d). Thus, Mr. Walker has not preserved his argument that the district court erred by failing to instruct the jury on imperfect self-defense and the government's burden to disprove it beyond a reasonable doubt as an element of first-degree murder.

**B. The district court did not commit plain error in failing to sua sponte instruct the jury on imperfect self-defense.**

Because Mr. Walker did not preserve his challenge to the district court's jury instructions, our review is for plain error. Sago, 74 F.4th at 1157. "To prevail on plain-error review, [Mr. Walker] must demonstrate (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1157–58 (quotations omitted).

Mr. Walker's claim of error relies primarily on United States v. Britt, where this court held that "where [] defense counsel specifically requests an instruction on a legally viable defense that is supported by the evidence presented at trial, a district court is

11

obligated to formulate and then tender to the jury such an instruction." 79 F.4th at 1294. In Britt, the district court rejected the defendant's proposed instruction on its theory of imperfect self-defense because the proposed instruction got the relevant law "exactly backwards." Id. at 1290. This court held that, even though the refusal to tender that legally incorrect instruction was not error, the district court still erred by refusing to include any imperfect self-defense instruction. Id. at 1291–93. In short, Mr. Walker claims that he requested an instruction informing the jury of imperfect self-defense, and that the district court erred in refusing his request, thereby relieving the government of its burden to disprove imperfect self-defense. Aplt. Br. at 28–36.

However, Britt is distinguishable because Mr. Walker never requested that the jury be instructed on imperfect self-defense, let alone that the government was required to disprove it beyond a reasonable doubt. In Britt, the imperfect self-defense instruction was in play throughout the trial — Mr. Britt requested an imperfect self-defense instruction, the government filed a motion in limine, and defense counsel argued in its favor at the charge conference going so far as to request the court's assistance in correcting his tendered instruction. 79 F.4th at 1287–89. The record in this case stands in stark contrast with Britt. Mr. Walker's proposed instructions included instructions for heat of passion and self-defense but made no mention of imperfect self-defense. I Supp. R. 22–58.

In the absence of any request from Mr. Walker, the district court was not required to instruct the jury on imperfect self-defense sua sponte. Sago, 74 F.4th at 1162. We have recognized that "[o]ne persuasive reason for the requirement that [affirmative

12

defense] instructions be requested is that whether to request such an instruction is often a strategic or tactical decision." Id. Our sibling circuits have also recognized this principle. United States v. Tyson, 653 F.3d 192, 212 (3d Cir. 2011) ("A defendant's strategy is his own. It is not for the district court to sua sponte determine which defenses are appropriate under the circumstances."); United States v. Gutierrez, 745 F.3d 463, 472 (11th Cir. 2014).

The decision to pursue heat of passion and self-defense (as well as an involuntary manslaughter instruction that appeared later) as the theories of defense, was one for Mr. Walker's trial counsel, not the district court. Mr. Walker may have pursued self-defense rather than imperfect self-defense because, where a finding of self-defense would lead to acquittal, a finding of imperfect self-defense would lead to a conviction for involuntary manslaughter. Britt, 79 F.4th at 1287; United States v. Toledo, 739 F.3d 562, 568–69 (10th Cir. 2014). Thus, the district court "wisely did not inject itself" into defense counsel's trial strategy. United States v. Ybarra Cruz, 982 F.3d 1284, 1295 (10th Cir. 2020).

Finally, we reject Mr. Walker's argument that the district court erred by not granting his request that involuntary manslaughter be included as an element of first-degree murder that the government needed to disprove beyond a reasonable doubt. To be sure, this court has held that a defendant "is entitled to instructions informing the jury of the theory of defense and of the Government's duty to prove beyond a reasonable doubt the absence of [that theory] in order to obtain a murder conviction." United States v. Lofton, 776 F.2d 918, 920 (10th Cir. 1985). But this argument is unavailing for two

13

reasons.  First, this argument proceeds from the same faulty assumption as Mr. Walker's arguments above: that involuntary manslaughter and imperfect self-defense are interchangeable.[6]  Once again, involuntary manslaughter is a lesser-included offense of first-degree murder, while imperfect self-defense is a mitigating circumstance.  Sago, 74 F.4th at 1159.

Second, this court has refused to extend Lofton to situations "where the defense is not squarely raised and the instructions properly define the differing mental states." Davis v. Maynard, 869 F.2d 1401, 1406–07 (10th Cir. 1989), vacated sub nom. Saffle v. Davis, 494 U.S. 1050 (1990); see also Ellis v. Hargett, 302 F.3d 1182, 1188 (10th Cir. 2002) (reviewing Davis and this court's refusal to extend Lofton).  Here, Lofton does not control because, as discussed above, Mr. Walker never "squarely raised" imperfect self-defense before the district court.  Davis, 869 F.2d at 1406–07.  Moreover, the instructions here accurately defined the mental states at issue and required the government to prove beyond a reasonable doubt that Mr. Walker acted with malice aforethought.  I R. 43.

---

[6] We note that Mr. Walker submitted a Rule 28(j) letter demonstrating that several district courts in this circuit have instructed juries not to convict defendants of murder unless they found that the government disproved imperfect self-defense beyond a reasonable doubt.  See Aplt. Supp. Auth. 2, 47, 58, 69, 79.  But these instructions are distinguishable from this case.  Unlike the involuntary manslaughter instruction in this case, these cited instructions included the essential requirement of imperfect self-defense — that the defendant subjectively believed that the use of deadly force was necessary to prevent death or great bodily harm to himself or others, even though his belief was not objectively reasonable.  See id. at 53–54, 60, 75.  Moreover, these examples do nothing to overcome the fact that Mr. Walker failed to adequately raise imperfect self-defense below, and the district court here had no obligation to instruct on that affirmative defense sua sponte.

In short, we reiterate our holding from <u>Britt</u> that "where [] defense counsel specifically requests an instruction on a legally viable defense that is supported by the evidence presented at trial, a district court is obligated to formulate and then tender to the jury such an instruction." 79 F.4th at 1294. However, when no such request is made, the district court need not sua sponte instruct the jury on that defense. <u>See</u> <u>Sago</u>, 74 F.4th at 1162. Here, Mr. Walker never requested that the jury be instructed on imperfect self-defense, and the district court properly did not raise the issue sua sponte. Because we find no error, let alone plain error, we need not address Mr. Walker's arguments regarding his substantial rights and the fairness, integrity, or public reputation of judicial proceedings.

AFFIRMED.